1  David T. Biderman, Bar No. 101577
   DBiderman@perkinscoie.com
2  Steven G. Polard, Bar No. 90319
   SPolard@perkinscoie.com
3  Amir Gamliel, Bar No. 268121
   AGamliel@perkinscoie.com
4  PERKINS COIE LLP
   1888 Century Park E., Suite 1700
5  Los Angeles, CA 90067-1721
   Telephone: 310.788.9900
6  Facsimile: 310.788.3399

7  Attorneys for Defendants
   Richard Bachmann, Kenneth Burke, Edward C.
8  Hutcheson, Myles Scoggins, Geoff A. Jones, D.
   Michael Wallace, Brett Cenkus, and Stephen
9  Morrell, each as individuals

10 Oleg Elkhunovich, Bar No. 269238
   email: oelkhuno@SusmanGodfrey.com
11 Susman Godfrey L.L.P.
   1901 Avenue of the Stars, Suite 950
12 Los Angeles, California 90067-6029
   Telephone: 310.789.3193
13 Facsimile: 310.789.3150

14 Attorneys for Defendant Rishi Varma, as an
   individual

15

16              UNITED STATES DISTRICT COURT

17             CENTRAL DISTRICT OF CALIFORNIA

18                 LOS ANGELES DIVISION

19

20 Special Value Continuation Partners,        Case No. **CV11  03290  DMG (RZx)**
   L.P., a Delaware limited partnership;
21 Tennenbaum DIP Opportunity Fund,           NOTICE OF REMOVAL OF ACTION
   LLC, a Delaware limited liability          UNDER 28 U.S.C. § 1332, 1334, 1441
22 company ; and Tennenbaum                    AND 1452 AND FEDERAL RULE OF
   Opportunities Partners V, LP, a            BANKRUPTCY PROCEDURE 9027
23 Delaware limited partnership,
                                              *[Superior Court of State of California,*
24              Plaintiffs,                    *County of Los Angeles Case No.*
                                              *BC457443]*
25        v.

26 Richard Bachmann, an individual;
   Kenneth Burke, an individual; Edward
27 C. Hutcheson, an individual; Myles
   Scoggins, an individual; Per Staehr, an
28 individual; Geoff A. Jones, an

NOTICE OF REMOVAL
77069-0001/LEGAL20620434.8

COPY

FILED
11 APR 18 PM 4:02
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY: ___

CALENDARED

1  individual; D. Michael Wallace, an
   individual; Rishi Varma, an individual;
2  Brent Cenkus, an individual, Stephen
   Morrell, an individual, Mads Bardsen,
3  an individual; Bjorn Inge Staalesen, an
   individual, Gerald Gray, an individual;
4  and DOES 1-99, inclusive,

5                    Defendants.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL

## <u>TABLE OF CONTENTS</u>

The Removed Case ..................................................................................................... 1

Grounds for Removal ............................................................................................... 1

28 U.S.C. §1332(a) – Diversity Jurisdiction .......................................................... 2

28 U.S.C. §1334(b)(2) - "Related To" a Case under Title 11 ................................ 4

Procedural Requirements for Removal are Met ...................................................... 9

Conclusion ............................................................................................................... 9

NOTICE OF REMOVAL
77069-0001/LEGAL20620434.8

# TABLE OF AUTHORITIES

CASES                                                                                           **Page(s)**

*A.H. Robins Co., Inc. v. Piccinin,*
   788 F.2d 994 (4th Cir. 1986)....................................................................... 6

*In re Arrow Huss, Inc.,*
   51 B.R. 853 (Bankr. D. Utah 1985) ............................................................ 7

*Carpenters Pension Trust for Southern California v. Ebbers,*
   299 B.R. 610 (C.D. Cal 2003)..................................................................... 6

*In re Enron Corp.,*
   296 B.R. 505 (C.D. Cal. 2003).................................................................... 6

*Federal Home Loan Bank of Seattle v. Barclays Capital, Inc.,*
   2010 WL 3662345 (W.D. Wash. Sept. 1, 2010)....................................... 7

*In re Fietz,*
   852 F.2d 455 (9th Cir. 1988)....................................................................... 6

*Franchise Tax Bd. V. Constr. Laborers Vacation Trust,*
   463 U.S. 1 (1983) ........................................................................................ 1

*Guglielmino v. McKee Foods Corp.,*
   506 F.3d 696 (9th Cir. 2007)....................................................................... 4

*In re Harris Pine Mills,*
   44 F.3d 1431 (9th Cir. 1995)....................................................................... 9

*Hendricks v. Detroit Diesel Corp.,*
   2009 WL 4282812 (N.D. Cal. Nov. 25, 2009)........................................... 7

*In re Minoco Group of Cos.,*
   799 F.2d 517 (9th Cir. 1986)....................................................................... 6

*In re Mortgages Ltd.,*
   427 B.R. 780 (D. Ariz. 2010)..................................................................... 6

*Otero Mills, Inc. v. Security Bank & Trust (In re Otero Mills, Inc.),*
   25 B.R. 1018 (D. N.M. 1982)..................................................................... 7

NOTICE OF REMOVAL

*Pacific Life Ins. Co. v. J.P. Morgan Chase & Co.,*
　　2003 WL 22025158 (C.D. Cal. June 30, 2003) ...................................................... 7

*Pacor, Inc. v. Higgins,*
　　743 F.2d 984 (3d. Cir. 1984) .................................................................................. 6

*In re Princess Louise Corp.,*
　　77 B.R. 766 (Bankr. C.D. Cal. 1987) .................................................................... 1

*Sanchez v. Monumental Life Ins. Co.,*
　　102 F.3d 398 (9th Cir. 1996) .................................................................................. 4

*In re Sizzler Rests. Intl., Inc.,*
　　262 B.R. 811 (Bankr. C.D. Cal. 2001) .................................................................. 6

*Special Value Continuation Partners, et al. v. Richard Bachmann, et al.,*
　　Case No. BC457443 (the "Removed Case") ......................................................... 1

*St. Paul Mercury Indemnity Co. v. Red Cab Co.,*
　　303 U.S. 283 (1938) ................................................................................................ 4

*Stichting Pensioenfonds ABP v. Countrywide Financial Corp.,*
　　2010 WL 5559973 (C.D. Cal. Dec. 29, 2010) ...................................................... 7

*In re Washington Mutual, Inc. Sec., Derivative & ERISA Litig.,*
　　2009 WL 3711614 (W.D. Wash. Nov. 2, 2009) ................................................... 7

**STATUTES**

28 U.S.C. § 157(b)(1) ..................................................................................................... 9

28 U.S.C. § 157(c)(2) ..................................................................................................... 9

28 U.S.C. § 1332 ............................................................................................................ 1

28 U.S.C. § 1332(a) ............................................................................................... 2, 4, 10

28 U.S.C. § 1334 ................................................................................................... 1, 9, 10

28 U.S.C. § 1334(b)(2) .............................................................................................. 2, 4

28 U.S.C. § 1441 ............................................................................................................ 1

28 U.S.C. § 1441(a) .............................................................................................. 2, 3, 10

- iii -

28 U.S.C. § 1446 ............................................................................ 1, 2, 10

28 U.S.C. § 1452 ............................................................................ 1, 9, 10

Chapter 11 of Title 11 of the United States Code ......................... 2, 4, 5, 7

**OTHER AUTHORITIES**

Federal Rule of Bankruptcy Procedure Rule 9027 .................................... 1

Federal Rule of Bankruptcy Procedure Rule 9027(a) ............................... 1

Federal Rule of Bankruptcy Procedure Rule 9027(c) ............................... 9

Local Rule 7.3 ........................................................................................... 9

NOTICE OF REMOVAL
77069-0001/LEGAL20620434.8

1    To:    The Clerk of the Court for the United States District Court, Central

2    District of California:

3         PLEASE TAKE NOTICE that Defendants Richard Bachmann, Kenneth

4    Burke, Edward C. Hutcheson, Myles Scoggins, Geoff A. Jones, D. Michael

5    Wallace, Brett Cenkus[1], Stephen Morrell and Rishi Varma[2] (the "Defendants")

6    hereby remove to this Court the state court action described in Paragraph 1 below.

7    Defendants remove this civil action pursuant to 28 U.S.C. §§ 1332, 1334, 1441 and

8    1452 and Federal Rule of Bankruptcy Procedure Rule 9027 on the grounds set forth

9    below.

10                        **The Removed Case**

11         1.    The removed case is a civil action filed on March 17, 2011 in the

12   Superior Court of the State of California for the County of Los Angeles, styled

13   *Special Value Continuation Partners, et al. v. Richard Bachmann, et al.*, Case No.

14   BC457443 (the "Removed Case"), which is incorporated herein, as if set forth in

15   full.

16         2.    Pursuant to 28 U.S.C. § 1446 and Federal Rule of Bankruptcy

17   Procedure 9027(a), this Notice of Removal is timely because it is being filed with

18   the Clerk for the Central District within 30 days after the Removed Case was filed

19   and less than 30 days after the first Defendant was served.

20                      **Grounds for Removal**

21         3.    Any claim or cause of action in a civil action may be removed to the

22   district court for the district where the civil action is pending if the district court has

23   original jurisdiction of such claim or cause of action.[3]  If all claims and causes of

24   action are removed, the state court is deprived of all further jurisdiction until such

25   time as there may be a remand.[4]

26
---
[1] Defendant Brett Cenkus was erroneously sued as Brent Cenkus.
[2] Defendant Rishi Varma, represented by separate counsel, is a party to this notice of removal.
27   [3] *Franchise Tax Bd. V. Constr. Laborers Vacation Trust*, 463 U.S. 1, 7-8 (1983) (citation omitted); *see also* 28 U.S.C. §§ 1452, 1334.
28   [4] *See In re Princess Louise Corp.*, 77 B.R. 766, 771 (Bankr. C.D. Cal. 1987).

                                    - 1 -
NOTICE OF REMOVAL
77069-0001/LEGAL20620434.8

1    4.    This Court possesses original jurisdiction over this dispute pursuant to

2    both 28 U.S.C. §1332(a) and 28 U.S.C. §1334(b).

3    5.    Pursuant to 28 U.S.C. §1332(a), district courts have original

4    jurisdictions "of all civil actions where the matter in controversy exceeds the sum or

5    value of $75,000, exclusive of interest and costs, and … is between citizens of

6    different States."

7    6.    Pursuant to 28 U.S.C. §1334(b), district courts have original

8    jurisdiction "of all civil proceedings arising under title 11, or arising in or related to

9    cases under title 11."[5]

10    7.    The state courts of California, and this Court, lack personal jurisdiction

11    over the Defendants, because none of them does business in California, nor did they

12    engage in contacts with California in connection with the alleged conduct in the

13    Removed Case that would subject them to personal jurisdiction of any court sitting

14    in California.  This Notice of Removal expressly reserves Defendants' denial of

15    personal jurisdiction, and Defendants will move to dismiss the Removed Case for

16    lack of personal jurisdiction and alternatively seek to transfer the case to another

17    jurisdiction that has personal jurisdiction over Defendants.

18                    **28 U.S.C. §1332(a) – Diversity Jurisdiction**

19    8.    This is a civil case that falls under the Court's original jurisdiction

20    under 28 U.S.C. §1332(a) and is one that may be removed to this Court pursuant to

21    28 U.S.C. §§1441(a) and 1446 based on the diversity of citizenship of the parties.

22    9.    Defendants Bachmann, Burke, Jones, Wallace, Cenkus, Morrell and

23    Varma are citizens of Texas.  Defendants Hutcheson and Scoggins are citizens of

24    Colorado.

25    10.    There are also persons named defendants who have not been served

26    with the summons and complaint in the Removed Case, but none of those unserved

27    defendants is a citizen of California, Texas or Colorado.  Bjorn Inge Staalesen and

28    [5] *Id.*

- 2 -

NOTICE OF REMOVAL

77069-0001/LEGAL20620434.8

1    Mads Bardsen are citizens of Norway. Per Staehr and Gerald Gray are citizens of

2    the United Kingdom. The citizenship of the Doe Defendants is irrelevant for

3    purposes of removal.[6]

4          11.    The complaint in the Removed Case does not allege that the adverse

5    parties are citizens of the same state. It alleges only that the Tennenbaum entities

6    are plaintiffs that have "members in" or "partners in" states in which one or more

7    defendant resides. The complaint does not identify any state in which the

8    Tennenbaum entities' partners or members are a citizen.

9          12.    Plaintiff Special Value Continuation Partners, LP ("SVCP") is a

10    Delaware limited partnership conducting business in Santa Monica, California.

11    Based on a search of publicly available information on SVCP and its partners, on

12    information and belief, no partner of SVCP is a citizen of Texas or Colorado.

13          13.    Plaintiff Tennenbaum DIP Opportunity Fund, LLC ("TDOF") is a

14    Delaware limited liability company conducting business in Santa Monica,

15    California. Based on a search of publicly available information on TDOF and its

16    members, on information and belief, no member of TDOF is a citizen of Texas or

17    Colorado.

18          14.    Plaintiff Tennenbaum Opportunity Partners V, LP ("TOPV") is a

19    Delaware limited liability partnership, conducting business in Santa Monica,

20    California. TOPV's only general partner is SVOF/MM, LLC, a Delaware limited

21    liability company, conducting business in Santa Monica, California. TOPV's only

22    limited partner is Tennenbaum Opportunity Fund, LLC, a Delaware limited liability

23    company, conducting business out of Santa Monica, California. SVOF/MM, LLC's

24    managing member is Tennenbaum Capital Partners, LLC, a Delaware limited

25    liability company. On information and belief, no member of Tennenbaum Capital

26    Partners, LLC, or of Tennenbaum Opportunity Fund, LLC, is a citizen of Texas or

27    Colorado.

28    [6] 28 U.S.C. §1441(a).

- 3 -

NOTICE OF REMOVAL
77069-0001/LEGAL20620434.8

15.     Based on public information currently available to Defendants as set forth in paragraphs 12 – 14 above, complete diversity of citizenship exists between the parties because none of the Defendants share any of the plaintiffs' citizenship.

16.     None of the Defendants is a citizen of the State in which this action is pending.

17.     Defendants vigorously deny the allegations of wrongful conduct, but for purposes of establishing the $75,000 amount in controversy required by 28 U.S.C. § 1332(a), Defendants are entitled to rely upon the allegations of the Complaint, which seek to impose liability in excess of $25,000,000.[7] Here, where the plaintiffs plead more than the jurisdictional amount, a defendant may expressly deny that the plaintiffs are entitled to any relief while relying on the relief requested in the complaint to meet the amount in controversy requirement.[8]

18.     Each Defendant served in this matter is a party to this Notice of Removal. The consent of defendants who have not been served is unnecessary.

### 28 U.S.C. §1334(b)(2) - "Related To" a Case under Title 11

19.     On March 17, 2011, plaintiffs SVOP, TDOF; and TOPV, collectively "Tennenbaum") commenced the Removed Case against the Defendants (current and former officers and members of the board of directors of Trico Marine Services, Inc. ("TMS").

20.     The complaint in the Removed Case alleges various actions taken by the Defendants on behalf of TMS and Trico Shipping AS, a foreign subsidiary of TMS "and its affiliates," which are referred to in the complaint as "Opco."

---

[7] *See St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938) (stating that when a complaint filed pleads more than the jurisdictional amount "the sum claimed by the plaintiff controls if the claim is apparently made in good faith"); *see also Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007) (noting that when a complaint filed in state court alleges on its face an amount in controversy sufficient to meet the federal jurisdictional threshold, such requirement is presumptively satisfied unless it appears to a "legal certainty" that the plaintiff cannot actually recover that amount.) (citing *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 402 (9th Cir. 1996)).
[8] *Id.*

- 4 -

NOTICE OF REMOVAL
77069-0001/LEGAL20620434.8

21.     The complaint is based on conduct by the Defendants in their capacities as officers and directors of TMS and Opco relating to complex credit facilities extended to TMS and its foreign operating subsidiaries.[9]  TMS and certain of its other subsidiaries, including Opco, are both borrowers and guarantors under these credit arrangements.[10]

22.     On August 25, 2010, TMS and its U.S. subsidiaries and one Cayman subsidiary (collectively, the "Debtors"), filed a petition for relief under Chapter 11 of Title 11 of the United States Code , in the United States Bankruptcy Court for the District of Delaware, assigned Chapter 11 Case Number 10-12653, referred to herein as the "Bankruptcy Proceedings."[11]  As the Removed Case is "related to" the Debtors' Bankruptcy Proceedings, grounds exist for removing the Removed Case to the district court.

23.     In their capacities as directors and officers of TMS and its debtor and non-debtor subsidiaries, the Defendants entered into indemnification contracts whereby Debtors are contractually obligated to pay defense costs associated with defending these actions.[12]  Debtors also purchased director and officer liability policies for the benefit of Defendants, the proceeds of which would be used in defending this civil action.[13]

---

[9] TMS and its U.S. and foreign subsidiaries provide subsea services, subsea trenching and protection services and towing and supply vessels to oil and natural gas exploration and production companies that operate in major offshore producing regions around the world, including the North Sea, West Africa, Mexico, Brazil and the Asia Pacific Region.

[10] *See* Tennenbaum Compl. ¶ 30.  The allegations include: TMS borrowed $25 million from Plaintiffs under the terms of an Amended and Restated U.S. Credit Agreement, dated June 11, 2010 (the "U.S. Credit Facility").  TMS's U.S. and foreign affiliates are guarantors under the U.S. Credit Facility.  *See also id.* ¶32.  TMS also guaranteed a $65 million working capital facility extended to Trico Shipping, whom, together with Trico Supply, DeepOcean AS, CTC Marine Protects, Ltd., and their subsidiaries, which are not debtors in the bankruptcy proceedings, are commonly referred to as "Opco".  TMS and its foreign subsidiaries are also parties to an agreement in the Bankruptcy Court to settle and compromise certain inter-company debt owed to the Debtors in exchange for stock in the non-debtor foreign subsidiaries.

[11] *See* concurrently filed Request for Judicial Notice ("RFN"), Exh. A.  TMS; Trico Marine Assets, Inc. ("TMA"); Trico Marine Operators, Inc. ("TMO"); Trico Marine International, Inc. ("TMI"); Trico Marine Cayman, L.P. ("Trico Cayman"); and Trico Holdco, LLC ("Holdco", and collectively "the Debtors") all filed bankruptcy and their cases are being jointly administered with TMS as the lead case; *See* RFN, Exh. B.

[12] *See* RFN, Exh. D., Sched. G.

[13] *See* RFN, Exh. E.

- 5 -

NOTICE OF REMOVAL
77069-0001/LEGAL20620434.8

24. To determine whether a civil action is "related to" a bankruptcy case, the Ninth Circuit has adopted the "conceivable effects" test articulated by the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d. Cir. 1984) (*impliedly overruled on other grounds*):

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of the proceeding could conceivably have any effects on the estate being administered in bankruptcy.* [Citations omitted in original]. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts the handling and administration of the bankrupt estate.[14]

25. The Removed Case can and will have an effect on the Debtors' estate currently being administered in the Bankruptcy Proceedings.

26. Any fair reading of the complaint in the Removed Case confirms that the Debtors are the real target of their allegations, and indispensable parties to the Removed Case.

27. The Debtors may be contractually obligated to pay any judgment entered in the Removed Case, either directly or indirectly through the D&O insurance policies.[15]

28. Defendants' entitlement to contractual indemnity against the Debtors also affects property of the bankruptcy estate and warrants removal of the case.[16]

---

[14] *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988) (quoting *Pacor*, 743 F.2d at 994, *impliedly overruled on other grounds*).
[15] *See In re Minoco Group of Cos.*, 799 F.2d 517, 518 (9th Cir. 1986); *see also A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1007-1008 (4th Cir. 1986).
[16] *Carpenters Pension Trust for Southern California v. Ebbers*, 299 B.R. 610, 613 (C.D. Cal 2003) (finding that the Ninth Circuit views "related to" jurisdiction broadly, and that indemnification agreements, even if not automatic, are sufficient to trigger federal subject matter jurisdiction); *see also In re Enron Corp.*, 296 B.R. 505 (C.D. Cal. 2003); *see also In re Sizzler Rests. Intl., Inc.*, 262 B.R. 811, 818-819 (Bankr. C.D. Cal. 2001) (holding that employee indemnification provides an adequate basis for "related to" jurisdiction even though indemnification was conditioned on a subsequent proceeding); *see also In re Mortgages Ltd.*, 427 B.R. 780, 787 (D. Ariz. 2010) (holding that even in the absence of an unconditional indemnification agreement "[t]he potential chance that . . .[the borrowers'] action

NOTICE OF REMOVAL
77069-0001/LEGAL20620434.8

1    These indemnity agreements remain executory and have yet to be assumed or

2    rejected.

3         29.    The Debtors' obligation to indemnify the Defendants has been

4    identified as a potential liability in the Bankruptcy Proceedings, and the Debtors

5    have included an explicit provision in their proposed Disclosure Statement and

6    Chapter 11 Plan (the "Plan") seeking to permanently enjoin any action that has

7    commenced or is continuing outside of the Bankruptcy Court after the effective

8    date of the Plan where the Debtors are or may be directly or indirectly liable by way

9    of contribution, indemnity, or otherwise.[17]

10        30.    The Removed Case is also related to the Debtors' Bankruptcy

11   Proceedings because it affects individuals whom are integral to the Debtors' efforts

12   to reorganize and consummate the Plan.[18]  Under the Debtors' Plan, officers of the

13   Debtors, including Defendants Bachmann[19], Cenkus[20], Wallace[21], and Morrell[22] will

14   be retained to assist in the administration of the Debtors' Chapter 11 Plan.  Their

15   responsibilities include, among other things: (i) making distributions to holders of

16   allowed claims; (ii) objecting to and prosecuting objections to claims or interests;

17   (iii) complying with the Plan and obligations under the Plan; (iv) authorizing the

18

19   against the Investors could affect administration of . . .[the debtor's] estate is enough to confer jurisdiction."); *see*
20   *also In re Washington Mutual, Inc. Sec., Derivative & ERISA Litig.*, 2009 WL 3711614, *1 (W.D. Wash. Nov. 2, 2009); *see also Stichting Pensioenfonds ABP v. Countrywide Financial Corp.*, 2010 WL 5559973, *4-5 (C.D. Cal. Dec. 29, 2010) (finding that an express agreement between the debtor and non-debtor defendants is sufficient to confer "related to" jurisdiction even if the defendant is not guaranteed indemnification); *see also, Federal Home Loan Bank of Seattle v. Barclays Capital, Inc.*, 2010 WL 3662345 (W.D. Wash. Sept. 1, 2010); *see also Hendricks v. Detroit Diesel Corp.*, 2009 WL 4282812 (N.D. Cal. Nov. 25, 2009); *see also Pacific Life Ins. Co. v. J.P. Morgan Chase & Co.*, 2003 WL 22025158 (C.D. Cal. June 30, 2003).
[17] *See* RFN, Exh. C., Section 12.07.
[18] *See In re Arrow Huss, Inc.*, 51 B.R. 853 (Bankr. D. Utah 1985) (actions against officers of debtor corporation stayed because diverting energies from reorganization process); *see also Otero Mills, Inc. v. Security Bank & Trust (In re Otero Mills, Inc.)*, 25 B.R. 1018 (D. N.M. 1982) (action against president of corporate debtor who guaranteed corporate obligations stayed because the president was to contribute substantial asset to fund the plan).
[19] Defendant Bachmann is the President and Chief Executive Officer of TMS.  He is also the Chairman of the Board of Directors of TMS.
[20] Defendant Cenkus is the General Counsel and Secretary of TMS.  He is also the President of Holdco, TMA, TMI, and TMO.
[21] Defendant Wallace is the Vice President and Chief Operating Officer of TMS.  He is also the Vice President of Holdco, TMA, TMI and TMO.
[22] Defendant Morrell is the Vice President of Finance of TMS.

- 7 -

1   sale of assets; (v) prosecuting, resolving, compromising and/or settling any

2   litigation on behalf of the Debtors; and (vi) taking all other such action as

3   necessary, desirable or appropriate to carry out the purpose of the Plan.[23]

4        31.    The allegations of the complaint in the Removed Case are based on

5   conduct of the Defendants in their capacities as officers and directors of the Debtors

6   and its affiliates.  Tennenbaum or other parties to the Bankruptcy Proceeding may

7   argue that decisions in the Removed Case have preclusive effects in the Bankruptcy

8   Proceedings.

9        32.    Moreover, the Removed Case also may otherwise forestall or interfere

10   with the proper administration of the bankruptcy proceeding.  The Committee of

11   Unsecured Creditors of the Debtors (the "Committee") has recently stated that it

12   will explore possible action against the boards of directors and officers of TMS,

13   TMO, Holdco, Trico Cayman, and non-debtor subsidiaries Trico Supply and Trico

14   Shipping for breaches of fiduciary duties and duties of loyalty and due care.[24]  This

15   possible action would include the Defendants.[25]  While the Defendants firmly deny

16   any such liability, if the Committee were to commence an adversary proceeding

17   against the Defendants in the Bankruptcy Proceedings and at the same time

18   Tennenbaum, also creditors in the bankruptcy proceeding, were to prevail in this

19   civil action, Tennenbaum could try to circumvent any orderly distribution of the

20   Debtors' estates, which include the insurance policies and still executory indemnity

21   agreements, that conform with priority schemes highlighted by the Bankruptcy

22   Code.

23

24

25   [23] *See* RFN, Exh. C., Section 4.04.

26   [24] *See* RFN, Exh. F.
   [25] Defendants Bachmann, Burke, Scoggins and Hutcheson are all directors of TMS.  Defendant Morrell is a director

27   of TMA, TMI and director of a subsidiary of Trico Supply.  Defendant Cenkus is a director of Trico Supply and
   Trico Shipping, as well as several subsidiaries of the two entities.  Defendant Jones is the former Chief Financial

28   Officer and Senior Vice President of Trico Marine Group.  Defendant Wallace is a director of Trico Marine Services
   (Hong Kong) Limited, a subsidiary of TMA.

- 8 -

NOTICE OF REMOVAL
77069-0001/LEGAL20620434.8

1   33.   For these reasons, this civil action is "related to" the Bankruptcy

2   Proceedings.  Accordingly, proper grounds exist for removal of this civil action to

3   the District Court in accordance with 28 U.S.C. §§ 1334 and 1452.

4   **Procedural Requirements for Removal are Met**

5   34.   All served defendants join in this Notice of Removal but pursuant to

6   28 U.S.C. § 1452, unanimity of defendants is not required for removal under that

7   ground.[26]

8   35.   In accordance with Federal Rule of Bankruptcy Procedure 9027(c),

9   Defendants will promptly file a copy of the Notice of Removal with the Clerk of the

10   Los Angeles County Superior Court.

11   36.   On removal of the civil action, the Defendants submit that this

12   proceeding will not be a core proceeding within the meaning of 28 U.S.C.

13   §157(b)(1).  At this stage, Defendants do not consent to entry of all final orders or

14   judgment by the Bankruptcy Court as permitted by 28 U.S.C. § 157(c)(2).

15   37.   The civil action to be removed is not a proceeding before the Tax

16   Court or a civil action by a governmental unit to enforce the governmental unit's

17   police or regulatory power.

18   38.   Defendants have attached true and correct copies of all process and

19   pleadings filed in the civil action to this Notice of Removal.

20   39.   No admission of fact, law or liability is intended by this Notice of

21   Removal, and all defenses, affirmative defenses and motions are hereby reserved,

22   including without limitation, the defenses of (i) insufficient process, (ii) lack of

23   personal jurisdiction, and (iii) failure to state a claim.

24   **Conclusion**

25   40.   This Court has jurisdiction over this case under 28 U.S.C. §1332(a)

26   and it may be removed to this Court pursuant to 28 U.S.C. §§1441(a) and 1446

27   based on the diversity of citizenship of the parties.

28   [26] *See In re Harris Pine Mills*, 44 F.3d 1431, 1435 (9th Cir. 1995)

- 9 -

NOTICE OF REMOVAL

41.     In addition, proper grounds exist for removal of this civil action to the District Court in accordance with 28 U.S.C. §§ 1334 and 1452.

42.     For the reasons enumerated above, removal of this civil action to the District Court is warranted.

DATED:  April 18, 2011

**PERKINS COIE LLP**

By: _____
David T. Biderman, Bar No. 101577
DBiderman@perkinscoie.com

Attorneys for Defendants
Richard Bachmann; Kenneth Burke;
Edward C. Hutcheson; Myles
Scoggins; Geoff A. Jones; D. Michael
Wallace; Brett Cenkus; Stephen
Morrell.

DATED:  April 18, 2011

**SUSMAN GODFREY LLP**

By: _____
Oleg Elkhunovich, Bar No. 269238
oelkhuno@SusmanGodfrey.com

Attorneys for Defendant
Rishi Varma

- 10 -

NOTICE OF REMOVAL
77069-0001/LEGAL20620434.8

# Exhibit "A"



**SUMMONS**

**(CITACION JUDICIAL)**

SUM-100

**NOTICE TO DEFENDANT:** RICHARD BACHMANN, an individual; KENNETH
**(AVISO AL DEMANDADO):** BURKE, an individual; EDWARD C. HUTCHESON,
an individual; MYLES SCOGGINS, an individual; PER STAEHR, an individual;
GEOFF A. JONES, an individual; D. MICHAEL WALLACE, an individual; RISHI
VARMA, an individual; BRENT CENKUS, an individual; STEPHEN MORRELL, an
individual; MADS BARDSEN, an individual; BJORN INGE STAALESEN, an
individual; GERALD GRAY, an individual; and DOES 1-99, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:** SPECIAL VALUE CONTINUATION
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):** PARTNERS, LP, a Delaware
limited partnership; TENNENBAUM DIP OPPORTUNITY FUND, LLC, a Delaware
limited liability company; AND TENNENBAUM OPPORTUNITIES PARTNERS V,
LP, a Delaware limited partnership

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

MAR 17 2011

John A. Clarke, Executive Officer/Clerk

BY _____ , Deputy
Mary Flores

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
(El nombre y dirección de la corte es):
SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF LOS ANGELES
111 North Hill Street
Los Angeles, CA 90012-3014

CASE NUMBER:
(Número del Caso:)
BC 457443

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Peter W. Devereaux, Esq., Bar No. 119666          (213) 485-1234          (213) 891-8763
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, California 90071

DATE:          JOHN A. CLARKE, CLERK          Clerk, by          Mary Flores          , Deputy
(Fecha)                                        (Secretario)                                  (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citation use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of (specify):

3. [ ] on behalf of (specify):

   under: [ ] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
          [ ] other (specify):
4. [ ] by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Legal
Solutions
Plus

Code of Civil Procedure §§ 412.20, 465



1   LATHAM & WATKINS LLP
        Peter W. Devereaux, Esq., Bar No. 119666
2       Robert A. Klyman, Esq., Bar No. 142723
        Amy C. Quartarolo, Esq., Bar No. 222144
3   355 South Grand Avenue
    Los Angeles, California 90071
4   Telephone: (213) 485-1234
    Facsimile: (213) 891-8763
5
    Attorneys for Plaintiffs Special Value
6   Continuation Partners, LP, Tennenbaum DIP
    Opportunity Fund, LLC and Tennenbaum
7   Opportunities Partners V, LP

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

MAR 17 2011

John A. Clarke, Executive Officer/Clerk
BY _____, Deputy
      Mary Flores

8

9               SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                      IN THE COUNTY OF LOS ANGELES

11                                          BC 4 5 7 4 4 3

12  SPECIAL VALUE CONTINUATION          CASE NO. _____
    PARTNERS, LP, a Delaware limited
13  partnership; TENNENBAUM DIP         COMPLAINT FOR DAMAGES FOR:
    OPPORTUNITY FUND, LLC, a Delaware
14  limited liability company; AND      (1) FRAUD [INTENTIONAL
    TENNENBAUM OPPORTUNITIES                MISREPRESENTATION];
15  PARTNERS V, LP, a Delaware limited
    partnership,                        (2) FRAUD [CONCEALMENT];
16
            Plaintiffs,                 (3) FRAUD [FALSE PROMISE]; AND
17
        v.                              (4) NEGLIGENT MISREPRESENTATION.
18
    RICHARD BACHMANN, an individual;    [DEMAND FOR JURY TRIAL]
19  KENNETH BURKE, an individual;
    EDWARD C. HUTCHESON, an individual;
20  MYLES SCOGGINS, an individual; PER  FILED IN CAMERA AND UNDER SEAL
    STAEHR, an individual; GEOFF A. JONES,
21  an individual; D. MICHAEL WALLACE, an
    individual; RISHI VARMA, an individual;
22  BRENT CENKUS, an individual; STEPHEN
    MORRELL, an individual; MADS
23  BARDSEN, an individual; BJORN INGE
    STAALESEN, an individual; GERALD
24  GRAY, an individual; and DOES 1-99,
    inclusive,
25
            Defendants.
26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

**NATURE OF THE ACTION**

1.     This is an action for fraud and negligent misrepresentation against Defendants Richard Bachmann, Kenneth Burke, Edward C. Hutcheson, Myles Scoggins, Per Staehr, Geoff A. Jones, D. Michael Wallace, Rishi Varma, Brent Cenkus, Stephen Morrell, Mads Bardsen, Bjorn Inge Staalesen, Gerald Gray and DOES 1-99 (collectively, "Defendants"). This action arises from the unfortunate facts and circumstances relating to the entry of Plaintiffs Special Value Continuation Partners, LP, Tennenbaum DIP Opportunity Fund, LLC and Tennenbaum Opportunities Partners V, LP (collectively, "Plaintiffs"), as lenders, into a credit agreement with Opco (as defined herein), the performance under that agreement, and the consummation of the transactions effectuated thereunder. By the claims asserted herein, Plaintiffs seek monetary damages, including punitive damages, for the wrongful acts of Defendants. Plaintiffs also seek recovery of all of their costs incurred in bringing and prosecuting this suit, including their attorneys' fees.

**JURISDICTION AND VENUE**

2.     This Court has jurisdiction because the matter in controversy exceeds the sum or value of $25,000.

3.     Venue is proper in this Court pursuant to California Code of Civil Procedure Sections 395 and 395.5. Plaintiffs have their principal place of business in the County of Los Angeles, State of California. The tortious conduct at issue took place in the County of Los Angeles, State of California.

**THE PARTIES**

4.     Plaintiff Special Value Continuation Partners, LP is a Delaware limited partnership with its principal place of business in California, and has partners in, among other states, Colorado and Texas.

5.     Plaintiff Tennenbaum DIP Opportunity Fund, LLC is a Delaware limited liability company with its principal place of business in California, and has members in, among other states, Texas.

///

1      6.      Plaintiff Tennenbaum Opportunities Partners V, LP is a Delaware limited

2  partnership with its principal place of business in California, and has partners in, among other

3  states, Colorado.

4      7.      Plaintiffs are informed and believe and on that basis allege that Defendant

5  Richard Bachmann is an individual residing in Houston, Texas, and is the Chairman of the Board

6  and Chief Executive Officer of Trico Marine Services, Inc.

7      8.      Plaintiffs are informed and believe and on that basis allege that Defendant

8  Kenneth Burke is an individual residing in Houston, Texas, is a member of the board of directors

9  of Trico Marine Services, Inc.

10      9.      Plaintiffs are informed and believe and on that basis allege that Defendant Edward

11  C. Hutcheson is an individual residing in Colorado, and is a member of the board of directors of

12  Trico Marine Services, Inc.

13      10.      Plaintiffs are informed and believe and on that basis allege that Defendant Myles

14  Scoggins is an individual residing in Colorado, and is a member of the board of directors of

15  Trico Marine Services, Inc.

16      11.      Plaintiffs are informed and believe and on that basis allege that Defendant Per

17  Staehr is an individual residing in Norway, and is a member of the board of directors of Trico

18  Marine Services, Inc.

19      12.      Plaintiffs are informed and believe and on that basis allege that Defendant Geoff

20  A. Jones is an individual residing in Houston, Texas, and is the former Chief Financial Officer

21  and Senior Vice President of Trico Marine Group.

22      13.      Plaintiffs are informed and believe and on that basis allege that Defendant D.

23  Michael Wallace is an individual residing in Houston, Texas, and is the Chief Operating Officer

24  and Vice President of Trico Marine Group.

25      14.      Plaintiffs are informed and believe and on that basis allege that Defendant Brent

26  Cenkus is an individual residing in Houston, Texas, and is the General Counsel and Secretary of

27  Trico Marine Group.

28  ///

15.     Plaintiffs are informed and believe and on that basis allege that Defendant Stephen Morrell is an individual residing in Houston, Texas, and is the Treasurer, Director of Financial Planning and principal financial officer for Trico Marine Group.

16.     Plaintiffs are informed and believe and on that basis allege that Defendant Rishi Varma is an individual residing in Houston, Texas, and was President of Trico Marine Group and a member of the board of directors of Trico Shipping AS until August 2010.

17.     Plaintiffs are informed and believe and on that basis allege that Defendant Mads Bardsen is an individual residing in Norway, and is a member of the board of directors of Trico Shipping AS.

18.     Plaintiffs are informed and believe and on that basis allege that Defendant Bjorn Inge Staalesen is an individual residing in Norway, and is a member of the board of directors of Trico Shipping AS.

19.     Plaintiffs are informed and believe and on that basis allege that Defendant Gerald Gray is an individual residing in the United Kingdom, and is the Managing Director of Trico Shipping AS.

20.     The true names and capacities, whether individual, corporate or otherwise, of Defendants DOES 1-99, inclusive, are unknown to Plaintiffs, who therefore sue each and all of them by such fictitious names. Plaintiffs will seek leave to amend this Complaint to allege their true names and capacities when they have been ascertained.   Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged and that Plaintiffs' damages as herein alleged were proximately caused by Defendants DOES 1-99, inclusive.

## GENERAL FACTUAL ALLEGATIONS

21.     This is a case involving, among other things, the misrepresentations of Defendants, as officers and directors of Trico Marine Services, Inc. and its U.S. affiliates ("Holdco") and Trico Shipping AS, a foreign operating subsidiary of Holdco, and its affiliates ("Opco," and collectively with Holdco, "Trico")[1], made to Plaintiffs to induce them to provide financing to Holdco and

---

[1]     Trico is also sometimes referred to as Trico Marine Group.

1   Opco in June 2010.  By this action, Plaintiffs seek monetary damages, including punitive

2   damages, to compensate them for the substantial damages they have suffered as the proximate

3   result of the wrongful acts of Defendants.

4        22.        As directors and officers of Holdco and Opco[2], Defendants provided, and caused

5   Holdco and Opco to provide, false and misleading financial projections and other representations

6   to Plaintiffs in May, June and July 2010.  Through their deceptive scheme, Defendants

7   misrepresented and concealed the true facts regarding the then present and reasonably anticipated

8   future financial condition of both Holdco and Opco.  Within weeks of Plaintiffs funding the Opco

9   Loan (as defined below), the true facts began to be revealed regarding Trico's financial condition

10  and prospects.  Opco's business has since experienced a steep decline and Opco is likely to file for

11  bankruptcy as soon as April 2011.  As a result of Defendants' wrongful acts, Plaintiffs may suffer

12  substantial losses on their investment in Opco.

13                      **Plaintiffs' Loans To Holdco And Opco**

14       23.        Beginning in May 2010, Plaintiffs negotiated the terms of a $50 million financing

15  commitment with Holdco to be guaranteed by subsidiaries of Holdco (other than Opco).  Early

16  on in the negotiations, Trico advised that it would likely seek additional financing from Plaintiffs

17  at the Opco level.  The initial proposal contemplated that Plaintiffs would refinance $15 million

18  of existing debt issued by Holdco, Holdco would file for bankruptcy protection, and Plaintiffs

19  would then provide an additional $35 million on a post-petition basis.  At Holdco's request, the

20  proposal was revised to provide that Plaintiffs would extend $25 million prior to a bankruptcy

21  filing instead of $15 million.  Under the revised proposal, because Holdco was already

22  contemplating a reorganization, the parties anticipated that the financing would be extended in

23  two tranches: (1) a $25 million loan extended upon closing, and (2) an additional $25 million

24  after Holdco filed bankruptcy (collectively, the "Holdco Loans").

25       24.        Between early May and early June 2010, Plaintiffs conducted substantial

26  diligence concerning both Holdco and Opco.  Among the many communications, both written

27  and oral, between Plaintiffs and Trico, certain Defendants, including Varma, Wallace, Jones and

28

[2]      There is substantial overlap between the management at Holdco and that at Opco.

1  Morrell, participated in meetings with Plaintiffs at Trico's Houston headquarters over the

2  Memorial Day weekend in 2010.

3      25.    Among other information, Defendants provided, caused or authorized to be

4  provided and/or were aware that other Defendants provided to Plaintiffs financial projections for

5  both Holdco and Opco. Plaintiffs made inquiries of certain Defendants concerning the reliability

6  of the projections offered to Plaintiffs in connection with their diligence efforts. In the initial

7  diligence meetings between Plaintiffs and Jones, Morrell, Varma and Wallace, these Defendants

8  further assured Plaintiffs that the projections provided during the diligence process were the only

9  and best projections that they had and that they were the product of a "bottoms up" analysis after

10  receiving input from the regional business units.

11      26.    Trico and its advisors provided Plaintiffs with financial projections showing

12  substantial projected earnings before interest, taxes, depreciation and amortization ("EBITDA")

13  for fiscal years 2010 and 2011. Specifically, Defendants Varma, Wallace, Jones and Morrell,

14  participated in meetings in May 2010 in which they represented to Plaintiffs (i) that Trico was

15  projected to earn approximately $56 million of EBITDA in 2010 and approximately $102

16  million of EBITDA in 2011 on a consolidated basis; (ii) that Opco was projected to earn

17  approximately $77 million of EBITDA in 2010 and approximately $111 million of EBITDA in

18  2011; (iii) that Opco had significant asset value and liquidity; and (iv) that several intercompany

19  notes owed by Opco in favor of Holdco (collectively, the "Intercompany Notes"), some of which

20  would be pledged as collateral to Plaintiffs, had substantial value. On information and belief,

21  Defendant Morrell was the officer primarily responsible for assembling the consolidated

22  financial projections.

23      27.    Defendants, and each of them, knew that Trico had a history of unreliable and/or

24  inflated projections. Defendants, and each of them, knew or should have known that Trico had a

25  history of not meeting its financial projections. Plaintiffs later learned, long after lending tens of

26  millions of dollars to Trico in reliance upon false financial projections, that the projections

27  provided to Plaintiffs during the diligence process materially inflated Trico's projected EBITDA,

28  among other things. Defendants, and each of them, knew or should have known that the

1    financial projections that were provided to Plaintiffs to induce them to extend financing to Trico

2    were materially false and not reliable.

3          28.     Plaintiffs' consideration of and ultimate decision to extend the Holdco Loans was

4    based upon the financial projections they were provided by Trico and its advisors, the appraisals

5    of vessels pledged as collateral, as well as the value of the Intercompany Note.  Defendants, and

6    each of them, knew or should have known that Plaintiffs' decision to extend financing to Holdco

7    and Opco was based upon, in substantial part, the false financial projections provided to

8    Plaintiffs.

9          29.     On or about June 7, 2010, shortly before the closing of the Holdco Loans and

10    before Plaintiffs learned that Holdco and Opco had provided the false projections described

11    above, Trico's advisors confirmed that Trico also would be requesting financing from Plaintiffs

12    at the Opco level in addition to the financing to be provided by Plaintiffs to Holdco.

13          30.     On June 8, 2010, Plaintiffs and Holdco signed a commitment letter for the Holdco

14    Loans.  On June 11, 2010, Plaintiffs and Holdco entered into the Second Amended and Restated

15    Loan Agreement, and Plaintiffs funded the initial $25 million to Holdco.  Defendants Bachmann,

16    Burke, Hutcheson, Scoggins and Staehr approved the Holdco Loans by resolution.  That

17    resolution was certified by Defendant Cenkus.

18          31.     Following closing of the Holdco Loans, Plaintiffs continued their diligence in

19    anticipation of funding a loan to Opco.  Trico's advisors, at the direction of one or more of

20    Defendants, provided additional financial information, including updated financial projections, for

21    Holdco and Opco to Plaintiffs.

22          32.     On June 29, 2010, Plaintiffs entered into a commitment to fund up to $65 million

23    to Opco (the "Opco Loan") as documented in the Amended Credit Agreement and Third

24    Amendment to Credit Agreement and Forbearance Agreement (the "Opco Credit Agreement").[3]

25    
   _____
   [3]   The Opco Credit Agreement was subsequently amended in the Fourth Amendment to

26    Credit Agreement dated as of July 23, 2010 (the "Fourth Amendment to Credit Agreement"), the
   Fifth Amendment to Credit Agreement and Forbearance Agreement dated as of September 21,

27    2010 (the "Fifth Amendment to Credit Agreement") and the Sixth Amendment to Credit
   Agreement and Consent to Asset Sale dated as of December 16, 2010 (the "Sixth Amendment to

28    Credit Agreement," and together with the Fourth Amended Credit Agreement and the Fifth
   Amended Credit Agreement, the "Amendments").

1   The Opco Loan was secured by a pledge of certain assets at Opco.  Opco and its affiliates,

2   including certain Holdco entities, guaranteed the full and prompt payment and performance of all

3   obligations, as defined in the loan documents, owing at any time to Plaintiffs.

4           33.     In extending the Opco Loan, Plaintiffs relied in part upon representations made by

5   Opco and its officers, including the following representations contained in the Opco Credit

6   Agreement:

7           • all representations and warranties contained therein are "true and correct in all

8               material respects"  (Opco Credit Agreement § 7.05.);

9           • all financial projections (including balance sheets, statements of income, cash

10              flows, etc.) which have been provided to Plaintiffs "present fairly in all material

11              respects the consolidated financial position of [Opco and its subsidiaries] . . ."

12              (Opco Credit Agreement § 8.05(a).);

13          • all financial projections "were prepared in good faith and are based on

14              reasonable assumptions, and there are no statements or conclusions in any of

15              the Projections which are based upon or include information known to [Opco]

16              to be misleading in any material respect or which fail to take into account

17              material information known to [Opco] . . . ."  (Opco Credit Agreement §

18              8.05(d).);

19          • Opco is not aware of "any liability or obligation of any nature that is not fully

20              disclosed . . . which, either individually or in the aggregate, could reasonably be

21              expected to have a Material Adverse Effect."[4]  (Opco Credit Agreement §

22              8.05(c).);

23          • Opco and its subsidiaries "are not insolvent and will not be rendered insolvent

24              by the incurrence of [additional debt per the Opco Credit Agreement], and will

25              not be left with unreasonably small capital with which to engage in their

---

[4]      The Opco Credit Agreement defines "Material Adverse Effect" as "a material adverse
effect (w) on the rights or remedies of the Lenders under the Credit Documents, taken as a
whole, (x) or the ability of the [Opco and related entities] and [Holdco], taken as a whole, to
perform its or their obligations to the Lenders or (y) on the property, assets, operations, liabilities
or financial condition of the [Opco and related entities] and [Holdco], taken as a whole."

1  respective businesses and will not have incurred debts beyond their ability to

2  pay such debts as they mature." (Opco Credit Agreement § 8.05(b).);

3  • "There are no actions, suits or proceedings pending or, to the knowledge of

4  [Opco], threatened (A) with respect to (i) any Mortgaged Vessel or (ii) any

5  Credit Document, or (B) that could reasonably be expected to have, either

6  individually or in the aggregate, a Material Adverse Effect." (Opco Credit

7  Agreement § 8.06.); and

8  • "All factual information (taken as a whole) furnished by or on behalf of [Opco]

9  . . . , will be true and accurate in all material respects on the date as of which

10  such information is dated or certified and not incomplete by omitting to state

11  any fact necessary to make such information (taken as a whole) not misleading

12  in any material respect at such time in light of the circumstances under which

13  such information was provided." (Opco Credit Agreement § 8.07.).

14  Defendants, and each of them, knew or should have known that these representations were false,

15  inaccurate and misleading. On information and belief, at the time Opco entered into the Opco

16  Credit Agreement and at all times subsequent, Opco was insolvent, did not have sufficient capital

17  to continue its businesses and did not have the ability to pay its debts as they came due.

18      34.  Defendant Gray executed the Officer's Certificate on behalf of Opco that was

19  provided to Plaintiffs in connection with the Opco Credit Agreement. The Officer's Certificate

20  confirms that:

21  • "[a]ll of the representations and warranties contained in the

22  [Opco Credit Agreement] are true and correct in all material respects . . .";

23  • "no actions, suits, investigations or proceedings . . . are pending or, to the

24  knowledge of [Opco and related entities], (x) threatened with respect to any

25  Credit Document, or (y) which could be reasonably to [sic] have a Material

26  Adverse Effect."; and

27  • "nothing has occurred since December 31, 2008 that has had, or could

28  reasonably be expected to have, a Material Adverse Effect."

35.     In a meeting of Opco's board of directors held on June 28, 2010, board members Varma, Bardsen and Staalesen (i) approved and authorized the Third Amendment and the Amended and Restated Credit Agreement (the "Opco Credit Agreement"), (ii) held that it was in the best interests of Opco and Holdco (as guarantor) to enter into the Opco Credit Agreement, (iii) authorized, empowered and directed the officers of Trico to execute and perform the Opco Credit Agreement, and (iv) ratified, confirmed and adopted all acts undertaken by officers of Trico in connection with the Opco Credit Agreement as duly authorized acts of Trico.  Certain subsidiaries and affiliates of Holdco, including Trico Holdco, LLC and Trico Marine Cayman, L.P., guaranteed the Opco loan.  On information and belief, one or more of Defendants approved the guarantees of the Opco Loan.

### Trico Substantially Revises Its Financial Projections

36.     On or about July 21, 2010, within weeks of Plaintiffs funding the Opco Loan, Trico's advisors, at the direction of Defendants, communicated to Plaintiffs that the Trico consolidated and Opco financial projections provided to Plaintiffs to induce them to fund the Holdco and Opco Loans were materially incorrect.  In contrast to those original projections, Defendants, including Bachmann, Morrell, Varma, Wallace and Bardsen, admitted that the revised projections called for (i) a decline in the projected 2010 consolidated EBITDA to approximately $30 million – a 47% decline, (ii) a decline in the projected 2011 consolidated EBITDA to approximately $69 million – a 32% decline, (iii) a decline in the projected 2010 Opco EBITDA to approximately $53 million – a 31% decline, and (iv) a decline in the projected 2011 Opco EBITDA to approximately $79 million – a 29% decline.

37.     Following receipt of this news, Plaintiffs engaged Defendants Bachmann, Wallace, Jones, Varma, Morrell, Bardsen and Cenkus in a series of communications, both written and oral, concerning how the financial projections provided to Plaintiffs in advance of closing on the Opco Loan and the Holdco Loans could have been so materially different than the revised projections provided just weeks later.  Among the many communications, Plaintiffs met with Defendants Bachmann, Varma, Bardsen, Wallace, Jones, Morrell and others in Houston at Trico's headquarters on at least three separate occasions.  In addition, Plaintiffs met with Defendants

1   Bardsen and others in Norway in September 2010 to discuss the ongoing financial relationship

2   and Opco's operations.  In October 2010, Plaintiffs also met with Wallace, Bachmann and others

3   in the United Kingdom to discuss the ongoing financial relationship.

**Trico Further Revises Its Financial Projections**

5       38.     On or about October 8, 2010, Trico provided Plaintiffs with further revised and

6   increasingly devastating financial projections.  Rather than the $56 million of EBITDA

7   Defendants represented to Plaintiffs in May 2010 that Trico would earn on a consolidated basis in

8   2010, Trico now was expected to earn only $200,000.00.  Further, rather than the $102 million of

9   EBITDA Defendants represented to Plaintiffs that Trico would earn on a consolidated basis in

10  2011, Trico was now projected to earn only $40 million.  As for the Opco projections, rather than

11  the $77 million of EBITDA Defendants represented to Plaintiffs in May 2010 that Opco would

12  earn in 2010, Opco now was expected to earn only $26 million, and rather than the $111 million

13  of EBITDA Defendants represented to Plaintiffs that Opco would earn in 2011, Opco was now

14  projected to earn only $44 million.

15      39.     Trico further revised its projections in December 2010.  On or about December 21,

16  2010, Trico reduced the 2010 projections for Opco to approximately $27 million – a 65% decline

17  from the projections provided to Plaintiffs in May 2010 – and reduced the 2011 projections for

18  Opco to approximately $31 million – a 72% decline from the projections provided to Plaintiffs in

19  May 2010.

20      40.     As a result of Opco's admission that the projections that it gave to Plaintiffs were

21  materially incorrect, Plaintiffs concluded that the conditions for additional advances under either

22  the Holdco Loans or the Opco Loan could no longer be satisfied.  Opco requested that, in lieu of

23  Plaintiffs terminating the remaining commitment and accelerating the debt and exercising other

24  remedies against Opco, Plaintiffs enter into a No-Draw Letter whereby Opco agreed not to submit

25  a notice of borrowing under the Opco Loan until December 2010.  Notwithstanding the revealed

26  misrepresentations and further evidence of erosion of value at Opco, as an accommodation, but

27  with full reservation of rights, Plaintiffs agreed to enter into the No-Draw Letter.  In the No-Draw

28  ///

1  Letter, signed by Defendant Gray, Opco acknowledged that this agreement was "[a]s a result of

2  adverse developments with respect to the financial condition of [Opco]."

3  <u>**Defendants Misrepresent Trico's Ability To Collect**</u>

4  <u>**On Certain Refund Guaranties**</u>

5      41.     One of the material items Plaintiffs relied upon in making their decision to extend

6  financing to Trico was the recovery of refund guaranties issued by several Indian financial

7  institutions in favor of Trico Subsea AS, an Opco subsidiary, in connection with the cancellation

8  of four vessels under a construction contract with an Indian shipyard, Tebma.  The refund

9  guaranties were similar to letters of credit, securing obligations allegedly owed by Tebma to

10  Opco.  Defendants Varma, Morrell, Jones and Cenkus represented to Plaintiffs that recovery of

11  the refund guaranties would bring approximately $20 million into Opco and its subsidiaries.

12  Plaintiffs relied upon Defendants' representations regarding the collection of the refund

13  guaranties.  Based upon the Opco projections Plaintiffs received from Trico prior to closing the

14  Opco Loan, without the refund guaranties, Opco would have gone cash negative by mid-2011.

15  In total, Defendants represented that Opco would receive approximately $89.8 million in value

16  from Tebma, including value from the vessels under contract.

17      42.     Defendants did not advise Plaintiffs of any history of disputes with Tebma, any

18  prior injunction proceedings initiated by Tebma, or any other reason why the refund guaranties

19  could not be collected.  Indeed, in the days leading up to closing of the Opco Loan, Defendant

20  Cenkus, in emails copying Defendants Varma and Morrell, represented to Plaintiffs that they had

21  written to the relevant financial institutions and no further demand or additional action was

22  necessary, and that the financial institutions must extend them or pay them out per the terms of

23  the refund guaranties.  In addition, Defendants Cenkus and Varma had multiple telephone

24  conversations with Plaintiffs in late June 2010 in which they confirmed that they were taking all

25  steps necessary to preserve the ability to draw on the refund guaranties.

26      43.     In the 10-Q filed on August 16, 2010 (the "Trico Marine 10-Q"), Trico disclosed

27  that on July 6, 2010, just days after the Opco Loan had closed, Tebma sent a letter to Trico

28  asserting that Trico breached its contracts with Tebma.  Tebma also initiated legal proceedings in

1   India to enjoin Opco from collecting on the refund guaranties (the "Tebma Injunction
2   Proceedings").

3       44.   Even after the Tebma Injunction Proceedings had been initiated, in meetings
4   between July 26-28, 2010 at Trico's Houston headquarters and in subsequent communications,
5   Defendants Cenkus, Varma and Bachmann indicated to Plaintiffs that Opco was confident that it
6   would prevail on collecting the refund guaranties.

7       45.   However, according to the Trico Marine 10-Q, Trico reported that its *"refund
8   guarantees may not be valid or cover all of our losses in the event of a termination of our
9   newbuild vessel construction contracts. We may not be able to draw on the refund guarantees
10  even if we lawfully terminate the newbuild vessel construction contracts."* [emphasis in
11  original]. This statement directly contradicts statements made by Defendant Cenkus to Plaintiffs,
12  that were made with the knowledge and consent of Defendants Varma and Morrell, on June 24,
13  2010 regarding Trico's ability to obtain payment under the refund guarantees: "[W]e made a
14  demand directly to the banks and they must extend them or pay them out per the terms of the
15  refund guarantees. In other words, the demand to the banks insures extension or payout."

16      46.   Even after Trico's public disclosures concerning the Tebma Injunction
17  Proceedings, Defendants Cenkus, Bachmann and Varma continued to represent to Plaintiffs that
18  they believed that Trico Subsea AS would recover the refund guaranties.

19      47.   On or about October 12, 2010, Trico Subsea AS entered into a settlement
20  agreement with Tebma, and agreed to waive all claims under the refund guaranties and claims to
21  cancelled hulls and the Trico Service vessel and the Trico Sea vessel for a settlement payment of
22  $18.5 million in favor of Trico Subsea AS. Opco had previously delivered projections to
23  Plaintiffs showing that Trico Subsea AS was entitled to receive approximately $89.8 million of
24  value from Tebma, including $19.8 million in cash payments under the refund guaranties. Thus,
25  the amount per the settlement agreement represented an 80% decrease in value from the amount
26  represented by Opco to Plaintiffs.

27  ///
28  ///

**The Opco Loan Is In Default**

48.     Of the original commitment of $65 million per the Opco commitment, $28.1 million has been funded to date.  The unutilized portion of the commitment has been terminated. Opco has not repaid the majority of the Opco Loan, and as of March 14, 2011, Opco owes Plaintiffs approximately $26.5 million plus interest and fees.

49.     Opco currently is in default under the Opco Credit Agreement.  In the Sixth Amendment to Credit Agreement, executed by Defendants Gray and Jones, Opco has acknowledged the following defaults, among others:

- Failure to deliver quarterly financial statements for the fiscal quarter ending September 30, 2010;
- Failure to comply with the minimum cash covenant for the months ending October 31, 2010 and November 30, 2010;
- Failure to comply with the minimum monthly EBITDA covenant for the months ending September 30, 2010, October 31, 2010 and November 30, 2010;
- Failure to draw on certain loan commitments; and
- Certain cross-defaults to the Holdco Loans.

Plaintiffs have entered into forbearances as to the exercise of their remedies for such defaults, but have not waived such remedies.

50.     Further, the additional misrepresentations set forth herein constitute material defaults under the Opco Credit Agreement and the Amendments.

**FIRST ALLEGED CAUSE OF ACTION**

**FRAUD**

**[INTENTIONAL MISREPRESENTATION]**

**(by Plaintiffs against Defendants Varma, Wallace, Jones, Morrell, Cenkus and Gray)**

51.     Plaintiffs repeat and allege each and every allegation contained in paragraphs 1-50 of this Complaint, and incorporate them herein.

52.     On or about June 6, 2010, in connection with diligence in anticipation of a loan to Holdco and Opco, Defendants Varma, Wallace, Jones, Morrell and Cenkus directed that

1   Plaintiffs be provided with revised and more detailed financial projections and other relevant

2   information concerning Holdco and Opco.

3       53.   Through the Opco Credit Agreement and the subsequent Amendments,

4   Defendants[5] represented to Plaintiffs that they would operate Opco and Holdco in good faith and

5   in furtherance of the future success of Opco and Holdco.

6       54.   Moreover, through the Opco Credit Agreement and the subsequent Amendments,

7   Defendants, including Defendant Gray, made the critical representations, including the

8   following:

9       • All of the financial projections (including balance sheets, statements of

10          income, cash flows, etc.) Opco issued to Plaintiffs presented fairly in all

11          material respects Opco's financial position;

12      • Opco prepared all of the financial projections in good faith;

13      • Opco's projections were not based upon and did not include any information

14          that was misleading in any material respect or which failed to take into account

15          material information known to Opco;

16      • Opco was not aware of any liability or obligation of any nature that was not

17          fully disclosed which, either individually or in the aggregate, could reasonably

18          be expected to have a Material Adverse Effect;

19      • Opco and its subsidiaries were not insolvent and would not be rendered

20          insolvent by the incurrence of additional debt per the Opco Credit Agreement;

21      • Opco had no knowledge of any actions, suits or proceedings pending or

22          threatened (A) with respect to (i) any Mortgaged Vessel or (ii) any Credit

23          Document, or (B) that could reasonably be expected to have, either individually

24          or in the aggregate, a Material Adverse Effect;

25      • All factual information (taken as a whole) furnished by or on behalf of Opco

26          was true and accurate in all material respects; and

27

28   [5]   All references to "Defendants" in the First Claim for Relief are to all Defendants against
whom the First Claim for Relief is asserted unless otherwise specified.

- All factual information (taken as a whole) furnished by or on behalf of Opco was not incomplete by omitting to state any fact necessary to make such information (taken as a whole) not misleading in any material respect.

55.   Defendant Gray executed the Officer's Certificate on behalf of Opco that was provided to Plaintiffs in connection with the Opco Credit Agreement.  In the Officer's Certificate, Gray confirmed that:

- "[a]ll of the representations and warranties contained in the [Opco Credit Agreement] are true and correct in all material respects . . .";
- "no actions, suits, investigations or proceedings . . . are pending or, to the knowledge of [Opco and related entities], (x) threatened with respect to any Credit Document, or (y) which could be reasonably to [sic] have a Material Adverse Effect."; and
- "nothing has occurred since December 31, 2008 that has had, or could reasonably be expected to have, a Material Adverse Effect."

56.   Additionally, beginning in May 2010 and continuing through at least the closing of the Opco Loan, through their communications over the telephone, through written correspondence and in person, Defendants engaged in numerous acts in furtherance of the fraud. Specifically, Defendants provided Plaintiffs with misleading material facts or directed that Plaintiffs be provided with misleading material facts, including:

- representations by Defendants Varma, Morrell, Jones and Wallace concerning the future value of Holdco and Opco based on financial projections provided to Plaintiffs at meetings in the course of the diligence process, including but not limited to at the meetings on or about May 31, 2010 at Trico's Houston headquarters;
- representations and inferences by Defendants Wallace, Jones, Varma and Morrell that the value of the Intercompany Notes was substantial; and
- representations by Defendant Cenkus, Varma and Morrell regarding the anticipated value to be received from Tebma.

1    57.    Defendants, and each of them, knew that the representations described above
2  were false.

3    58.    Defendants, and each of them, intended for Plaintiffs to rely upon the
4  representations in order to obtain the financing necessary for Opco to continue its business
5  operations.

6    59.    As a result, Plaintiffs reasonably relied on these representations and funded a total
7  of approximately $28.1 million to Opco.  Plaintiffs were harmed because they entered into
8  agreements and amendments concerning the Opco Loan, resulting in damages in an amount to be
9  proven at trial.

10    60.    Defendants' actions were committed with conscious disregard of Plaintiffs' rights
11  and with a specific intent to defraud and injure Plaintiffs, such as to constitute fraud, oppression
12  and malice.  By virtue of Defendants' willful and wrongful conduct, Plaintiffs are entitled to
13  punitive and exemplary damages as determined by this Court.

14  ### SECOND ALLEGED CAUSE OF ACTION

15  ### FRAUD

16  ### [CONCEALMENT]

17  **(by Plaintiffs against Defendants Varma, Wallace, Jones, Morrell, Cenkus and Gray)**

18    61.    Plaintiffs repeat and allege each and every allegation contained in paragraphs 1-
19  60 of this Complaint, and incorporate them herein.

20    62.    Defendants[6] had a relationship of trust and confidence with Plaintiffs resulting
21  from their negotiations with respect to the Holdco Loans, the Opco Credit Agreement and the
22  subsequent Amendments.

23    63.    Through the various communications that culminated in the consummation of the
24  Opco Credit Agreement and the subsequent Amendments, Defendants intentionally failed to
25  disclose certain material facts.  Instead, Defendants unlawfully concealed material information
26  ///

27

28  [6]    All references to "Defendants" in the Second Claim for Relief are to all Defendants
against whom the Second Claim for Relief is asserted unless otherwise specified.

1   with respect to issues that formed the basis on which Plaintiffs agreed to extend the Opco Loan,

2   including:

- financial projections (including balance sheets, statements of income, cash flows, etc.);
- the extent of Opco's awareness as to any actual or potential liability or obligation, including a possible dispute with Tebma concerning the refund guaranties;
- the deteriorating financial condition of Opco and its subsidiaries, including the failure to represent truthfully that Opco was insolvent;
- the extent of Opco's knowledge of any actions, suits or proceedings pending or threatened (A) with respect to (i) any Mortgaged Vessel or (ii) any Credit Document, or (B) that could reasonably be expected to have, either individually or in the aggregate, a Material Adverse Effect, including a potential dispute with Tebma concerning the refund guaranties; and
- the value to be received from Tebma and the fact or the possibility of the Tebma Injunction Proceedings.

64.   In addition, Defendant Gray executed the Officer's Certificate on behalf of Opco that was provided to Plaintiffs in connection with the Opco Credit Agreement.  In the Officer's Certificate, Gray confirmed that:

- "[a]ll of the representations and warranties contained in the [Opco Credit Agreement] are true and correct in all material respects . . .";
- "no actions, suits, investigations or proceedings . . . are pending or, to the knowledge of [Opco and related entities], (x) threatened with respect to any Credit Document, or (y) which could be reasonably to [*sic*] have a Material Adverse Effect."; and
- "nothing has occurred since December 31, 2008 that has had, or could reasonably be expected to have, a Material Adverse Effect."

28   ///

65.   Defendants intended to deceive Plaintiffs by concealing these material facts.

66.   Plaintiffs reasonably relied upon Defendants' deceptions.

67.   As a result, Plaintiffs were harmed because they entered into agreements and amendments concerning the Opco Loan, resulting in damages in an amount to be proven at trial.

68.   Defendants' concealment was a substantial factor in causing Plaintiffs' harm.

69.   Defendants' actions were committed with conscious disregard of Plaintiffs' rights and with a specific intent to defraud and injure Plaintiffs, such as to constitute fraud, oppression and malice. By virtue of Defendants' willful and wrongful conduct, Plaintiffs are entitled to punitive and exemplary damages as determined by this Court.

### THIRD ALLEGED CAUSE OF ACTION

### FRAUD

### [FALSE PROMISE]

### (by Plaintiffs against Defendants Varma, Wallace, Jones, Morrell, Cenkus and Gray)

70.   Plaintiffs repeat and allege each and every allegation contained in paragraphs 1-69 of this Complaint, and incorporate them herein.

71.   Through the Opco Credit Agreement and the subsequent Amendments, Defendants[7] promised Plaintiffs that they would operate Opco in good faith and in furtherance of the future success of Opco. All of the promises referenced herein were paramount to Plaintiffs agreeing to the Opco Credit Agreement and the Amendments.

72.   During Plaintiffs' diligence in connection with the Opco Credit Agreement, Defendants, including Varma, Wallace, Jones and Morrell, represented to Plaintiffs that Trico was projected to earn approximately $56 million of EBITDA in 2010 on a consolidated basis and approximately $102 million of EBITDA in 2011 on a consolidated basis, that Opco had significant asset value and liquidity and that the value of the Intercompany Notes was substantial.

///

---

[7]   All references to "Defendants" in the Third Claim for Relief are to all Defendants against whom the Third Claim for Relief is asserted unless otherwise specified.

73.     Through the Opco Credit Agreement and the subsequent Amendments, Defendants, and each of them, made, caused to be made, or authorized the following critical representations to Plaintiffs:

- All of the financial projections (including balance sheets, statements of income, cash flows, etc.) Opco issued to Plaintiffs presented fairly in all material respects Opco's financial position;

- Opco prepared all of the financial projections in good faith;

- Opco's Projections were not based upon and did not include any information that was misleading in any material respect or which failed to take into account material information known to Opco;

- Opco was not aware of any liability or obligation of any nature that was not fully disclosed which, either individually or in the aggregate, could reasonably be expected to have a Material Adverse Effect;

- Opco and its subsidiaries were not insolvent and would not be rendered insolvent by the incurrence of additional debt per the Opco Credit Agreement;

- Opco had no knowledge of any actions, suits or proceedings pending or threatened (A) with respect to (i) any Mortgaged Vessel or (ii) any Credit Document, or (B) that could reasonably be expected to have, either individually or in the aggregate, a Material Adverse Effect;

- All factual information (taken as a whole) furnished by or on behalf of Opco was true and accurate in all material respects; and

74.     All factual information (taken as a whole) furnished by or on behalf of Opco was not incomplete by omitting to state any fact necessary to make such information (taken as a whole) not misleading in any material respect.

75.     Moreover, Defendant Gray executed the Officer's Certificate on behalf of Opco that was provided to Plaintiffs in connection with the Opco Credit Agreement. In the Officer's Certificate, Gray confirmed that:

///

- "[a]ll of the representations and warranties contained in the [Opco Credit Agreement] are true and correct in all material respects . . .";

- "no actions, suits, investigations or proceedings . . . are pending or, to the knowledge of [Opco and related entities], (x) threatened with respect to any Credit Document, or (y) which could be reasonably to [sic] have a Material Adverse Effect."; and

- "nothing has occurred since December 31, 2008 that has had, or could reasonably be expected to have, a Material Adverse Effect."

76.     Within weeks after Plaintiffs funded the Opco Loan, Defendants admitted that the Trico consolidated and Opco financial projections were materially incorrect and forecasted a significant decline in both the 2010 and 2011 financial projections.

77.     In part because of additional promises made by Defendants and their advisors with respect to Opco's present and future financial condition, Plaintiffs did not accelerate the loans or exercise other remedies.

78.     In October 2010, Trico subsequently provided Plaintiffs with further revised and increasingly devastating financial projections.  Rather than the $56 million of EBITDA Defendants represented to Plaintiffs that Trico would earn on a consolidated basis in 2010, Trico now was expected to earn only $200,000.00.  Further, rather than the $102 million of EBITDA Defendants represented to Plaintiffs that Trico would earn on a consolidated basis in 2011, Trico was now projected to earn only $40 million.  There were also substantial declines from the original projections at the Opco level.

79.     Based upon the Opco projections Plaintiffs received from Trico prior to closing the Opco Loan, without the refund guaranties, Opco would have gone cash negative by mid-2011.  In total, Defendants represented that Opco would receive approximately $89.8 million in value from Tebma, including value from the vessels under contract.  Defendants did not advise Plaintiffs of any history of disputes with Tebma, any prior injunction proceedings threatened or initiated by Tebma, or any other reason why the refund guaranties could not be collected. Indeed, in the days leading up to closing of the Opco Loan, Defendant Cenkus, in emails copying

1   Defendants Varma and Morrell, represented to Plaintiffs that they had written to the relevant

2   financial institutions and no further demand or additional action was necessary, and that the

3   financial institutions must extend them or pay them out per the terms of the refund guaranties.  In

4   addition, Defendants Cenkus and Varma had multiple telephone conversations with Plaintiffs in

5   late June 2010 in which they confirmed that they were taking all steps necessary to preserve the

6   ability to draw on the refund guaranties.

7         80.   In its 10-Q filed on August 16, 2010 Trico reported that its *"refund guaranties*

8   *may not be valid or cover all of our losses in the event of a termination of our newbuild vessel*

9   *construction contracts. We may not be able to draw on the refund guaranties even if we*

10  *lawfully terminate the newbuild vessel construction contracts."* [emphasis in original].  After

11  the 10-Q was filed, Defendants Cenkus, Varma and Bachmann continued to represent to

12  Plaintiffs that they believed Trico Subsea AS would recover the refund guaranties.

13        81.   Then, on October 12, 2010, Opco settled the dispute with Tebma for $18.5

14  million, representing an 80% decrease in value from the forecast value of $89.8 million

15  presented to Plaintiffs.

16        82.   At the time Defendants made these promises, they had no intent to fulfill the

17  promises, but rather, intended to obtain additional funds for Opco to continue its business

18  operations at any cost to Plaintiffs and/or to induce Plaintiffs to forebear from accelerating the

19  Opco Loan.

20        83.   As a result, Plaintiffs reasonably relied on Defendants' false promises and funded

21  a total of $28.1 million to Opco.

22        84.   Plaintiffs' reliance on Defendants' false promises was a substantial factor in

23  causing its harm.

24        85.   As a proximate result of Defendants' false promises, Plaintiffs have been

25  damaged in an amount to be proven at trial.

26        86.   Defendants' actions were committed with conscious disregard of Plaintiffs' rights

27  and with a specific intent to defraud and injure Plaintiffs, such as to constitute fraud,

28  ///

1  oppression and malice. By virtue of Defendants' willful and wrongful conduct, Plaintiffs are

2  entitled to punitive and exemplary damages as determined by this Court.

3  ## FOURTH ALLEGED CAUSE OF ACTION

4  ### NEGLIGENT MISREPRESENTATION

5  **(by Plaintiffs against all Defendants)**

6  87.   Plaintiffs repeat and allege each and every allegation contained in paragraphs 1-

7  86 of this Complaint, and incorporate them herein.

8  88.   Plaintiffs were first provided with financial information regarding Trico in

9  connection with their diligence in anticipation of loans at both the Holdco and Opco levels in

10  May 2010. On or about May 27, 2010, in connection with diligence in anticipation of a loan to

11  Opco, Defendants Varma, Wallace, Jones and Morrell, directed that Plaintiffs be provided with

12  revised and more detailed financial projections for Holdco and Opco.

13  89.   Through the Opco Credit Agreement and the subsequent Amendments,

14  Defendants[8] represented to Plaintiffs that they would operate Opco and Holdco in good faith and

15  in furtherance of the future success of Opco and Holdco.

16  90.   Moreover, through the Opco Credit Agreement and the subsequent Amendments,

17  Defendants, and each of them, knew or should have known that these critical representations

18  were made to Plaintiffs:

19  • All of the financial projections (including balance sheets, statements of

20  income, cash flows, etc.) Opco issued to Plaintiffs presented fairly in all

21  material respects Opco's financial position;

22  • Opco prepared all of the financial projections in good faith;

23  • Opco's Projections were not based upon and did not include any information

24  that was misleading in any material respect or which failed to take into account

25  material information known to Opco;

26  ///

27

28  [8]   All references to "Defendants" in the Fourth Claim for Relief are to all Defendants
against whom the Fourth Claim for Relief is asserted unless otherwise specified.

- Opco was not aware of any liability or obligation of any nature that was not fully disclosed which, either individually or in the aggregate, could reasonably be expected to have a Material Adverse Effect;

- Opco and its subsidiaries were not insolvent and would not be rendered insolvent by the incurrence of additional debt per the Opco Credit Agreement;

- Opco had no knowledge of any actions, suits or proceedings pending or threatened (A) with respect to (i) any Mortgaged Vessel or (ii) any Credit Document, or (B) that could reasonably be expected to have, either individually or in the aggregate, a Material Adverse Effect;

- All factual information (taken as a whole) furnished by or on behalf of Opco was true and accurate in all material respects; and

- All factual information (taken as a whole) furnished by or on behalf of Opco was not incomplete by omitting to state any fact necessary to make such information (taken as a whole) not misleading in any material respect.

91.     In approving the Opco Credit Agreement, Defendants Varma, Bardsen and Staalesen ratified, confirmed and adopted all acts undertaken by officers of Trico in connection with the Opco Credit Agreement.  Specifically, in a meeting of Opco's board of directors held on June 28, 2010, board members Varma, Bardsen and Staalesen (i) approved and authorized the Third Amendment and the Amended and Restated Credit Agreement (the "Opco Credit Agreement"), (ii) held that it was in the best interests of Opco and Holdco (as guarantor) to enter into the Opco Credit Agreement, (iii) authorized, empowered and directed the officers of Trico to execute and perform the Opco Credit Agreement, and (iv) ratified, confirmed and adopted all acts undertaken by officers of Trico in connection with the Opco Credit Agreement as duly authorized acts of Trico.

92.     Defendant Gray executed the Officer's Certificate on behalf of Opco that was provided to Plaintiffs in connection with the Opco Credit Agreement.  In the Officer's Certificate, Gray confirmed that:

///

- "[a]ll of the representations and warranties contained in the [Opco Credit Agreement] are true and correct in all material respects . . .";
- "no actions, suits, investigations or proceedings . . . are pending or, to the knowledge of [Opco and related entities], (x) threatened with respect to any Credit Document, or (y) which could be reasonably to [*sic*] have a Material Adverse Effect."; and
- "nothing has occurred since December 31, 2008 that has had, or could reasonably be expected to have, a Material Adverse Effect."

93. Defendants Bachmann, Burke, Hutcheson, Scoggins and Staehr approved the Holdco Loans by resolution and knew or should have known that Plaintiffs were provided with financial information upon which they relied in their decision to extend financing to Trico. That resolution was certified by Defendant Cenkus. Defendants Bachmann, Burke, Hutcheson, Scoggins and Staehr, as directors of Holdco, were aware that Plaintiffs had been provided with certain financial projections and information, including the projections that were later revised within weeks of the closing of the Opco Loan. On information and belief, one or more of Defendants approved the guarantee of the Opco Loan by certain subsidiaries and affiliates of Holdco, including Trico Holdco, LLC and Trico Marine Cayman, L.P.

94. Defendants, and each of them, knew or should have known that Trico had a history of unreliable and/or inflated projections. Defendants, and each of them, knew or should have known that Trico had a history of not meeting its financial projections. Defendants, and each of them, knew or should have known that the financial projections that were provided to Plaintiffs to induce them to extend financing to Trico were materially false and not reliable.

95. Additionally, beginning in May 2010 and continuing through at least the closing of the Opco Loan, through their communications over the telephone, through written correspondence, and in person, Defendants engaged in numerous acts in furtherance of their misrepresentations, including:

- representations by Defendants Varma, Morrell, Wallace and Jones concerning the future value of Holdco and Opco based on financial projections provided

1            to Plaintiffs at meetings in the course of the diligence process, including but

2            not limited to at the meetings on or about May 31, 2010 at Trico's Houston

3            headquarters;

4         •  representations and inferences by Defendants, including Wallace, Jones,

5            Varma and Morrell, that the value of the Intercompany Notes was substantial;

6            and

7         •  representations by Defendants, including Cenkus and Varma, regarding the

8            anticipated value to be received from Tebma.

9      96.    These representations made by Defendants were not true, and they had no

10  reasonable grounds for believing the representations were true when they made them.

11      97.    Defendants intended for Plaintiffs to rely on the representations in order to obtain

12  the financing necessary for Opco to continue its business operations.

13      98.    As a result, Plaintiffs reasonably relied on these representations and funded a total

14  of approximately $28 million to Opco.

15      99.    Plaintiffs' reliance on Defendants' omissions and statements was justified

16  because, at all times mentioned herein, Defendants appeared to be acting in good faith, and

17  Plaintiffs reasonably believed that Defendants would disclose all material facts.

18      100.   Plaintiffs' reliance on Defendants' representations was a substantial factor in

19  causing their harm.

20      101.   As a proximate result of Defendants' misrepresentations, Plaintiffs have been

21  damaged in an amount to be proven at trial.

22                  **PRAYER FOR RELIEF**

23      WHEREFORE, Plaintiffs Special Value Continuation Partners, LP, Tennenbaum DIP

24  Opportunity Fund, LLC and Tennenbaum Opportunities Partners V, LP pray for judgment as

25  follows:

26      1.     For compensatory damages in an amount to be proven at trial;

27      2.     For punitive damages in an amount appropriate to punish each of the

28  Defendants and to make an example of each of them to the community;

1    3.    For all attorneys' fees and costs incurred by Plaintiffs in bringing and

2    prosecuting this action; and

3    4.    For such other and further relief as the Court may deem just, proper and

4    appropriate.

5    Dated:  March 17, 2011                    LATHAM & WATKINS LLP

6

7                                             By:

8                                                 Amy C. Quartarolo
                                             Attorneys for Plaintiffs Special Value Continuation
9                                            Partners, LP, Tennenbaum DIP Opportunity Fund,
                                             LLC and Tennenbaum Opportunities Partners V, LP
10

11                              **DEMAND FOR JURY TRIAL**

12        Plaintiffs Special Value Continuation Partners, LP, Tennenbaum DIP Opportunity Fund,

13   LLC and Tennenbaum Opportunities Partners V, LP hereby demand a trial by jury on all issues

14   and all causes of action alleged against each of the Defendants.

15   Dated:  March 17, 2011                    LATHAM & WATKINS LLP

16

17                                             By:

18                                                 Amy C. Quartarolo
                                             Attorneys for Plaintiffs Special Value Continuation
19                                           Partners, LP, Tennenbaum DIP Opportunity Fund,
                                             LLC and Tennenbaum Opportunities Partners V, LP
20

21   LA\22359916.4

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

26                                                      COMPLAINT

COPY

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Peter W. Devereaux, Esq., Bar No. 119666<br>Amy C. Quartarolo, Esq., Bar No. 222144<br>LATHAM & WATKINS LLP<br>355 South Grand Avenue<br>Los Angeles, California 90071 | |

TELEPHONE NO.: (213) 485-1234    FAX NO.: (213) 891-8763
ATTORNEY FOR *(Name)*: Plaintiffs Special Value Continuation Partners, LP, et al.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012-3014
BRANCH NAME: Central District

CASE NAME:   SPECIAL VALUE CONTINUATION PARTNERS, LP, ET AL.
v. RICHARD BACHMANN, ET AL.

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

MAR 17 2011

John A. Clarke, Executive Officer/Clerk
BY_____, Deputy
Mary Flores

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| x   Unlimited<br>(Amount<br>demanded<br>exceeds $25,000)   Limited<br>(Amount<br>demanded is<br>$25,000 or less) | Counter   Joinder<br>Filed with first appearance by defendant<br>*(Cal. Rules of Court, rule 3.402)* | JUDGE:<br>DEPT: BC 457443 |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- Auto (22)
- Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- Asbestos (04)
- Product liability (24)
- Medical malpractice (45)
- Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- Business tort/unfair business practice (07)
- Civil rights (08)
- Defamation (13)
- X. Fraud (16)
- Intellectual property (19)
- Professional negligence (25)
- Other non-PI/PD/WD tort (35)

**Employment**
- Wrongful termination (36)
- Other employment (15)

**Contract**
- Breach of contract/warranty (06)
- Rule 3.740 collections (09)
- Other collections (09)
- Insurance coverage (18)
- Other contract (37)

**Real Property**
- Eminent domain/Inverse condemnation (14)
- Wrongful eviction (33)
- Other real property (26)

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38)

**Judicial Review**
- Asset forfeiture (05)
- Petition re: arbitration award (11)
- Writ of mandate (02)
- Other judicial review (39)

**Provisionally Complex Civil Litigation**
*(Cal. Rules of Court, rules 3.400-3.403)*
- Antitrust/Trade regulation (03)
- Construction defect (10)
- Mass tort (40)
- Securities litigation (28)
- Environmental/Toxic tort (30)
- Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- RICO (27)
- Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- Partnership and corporate governance (21)
- Other petition *(not specified above)* (43)

2. This case   x   is      is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a.  x  Large number of separately represented parties   d.  x  Large number of witnesses
   b.  x  Extensive motion practice raising difficult or novel   e.      Coordination with related actions pending in one or more courts issues that will be time-consuming to resolve       in other counties, states, or countries, or in a federal court
   c.  x  Substantial amount of documentary evidence   f.      Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a.  x  monetary   b.      nonmonetary; declaratory or injunctive relief   c.  x  punitive

4. Number of causes of action *(specify)*: Four

5. This case      is    x  is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 3/17/2011

AMY C. QUARTAROLO
*(TYPE OR PRINT NAME)*                                              *(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | CIVIL CASE COVER SHEET | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10 |
|---|---|---|

Legal Solutions Plus

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**          CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
    Medical Malpractice–Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
    Contract/Warranty Breach—Seller Plaintiff (*not fraud or negligence*)
    Negligent Breach of Contract/Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case—Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage (*not provisionally complex*) (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment (*non-domestic relations*)
    Sister State Judgment
    Administrative Agency Award (*not unpaid taxes*)
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
    Declaratory Relief Only
    Injunctive Relief Only (*non-harassment*)
    Mechanics Lien
    Other Commercial Complaint Case (*non-tort/non-complex*)
    Other Civil Complaint (*non-tort/non-complex*)
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (*not specified above*) (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief from Late Claim
    Other Civil Petition

# COPY

| SHORT TITLE: SPECIAL VALUE CONTINUATION PARTNERS, LP | CASE NUMBER |
|---|---|
| | BC 457443 |

FOR COURT USE ONLY

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

MAR 17 2011

John A. Clarke, Executive Officer/Clerk

BY _____, Deputy
Mary Flores

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

Item I.  Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES   CLASS ACTION? ☐YES   LIMITED CASE? ☐YES   TIME ESTIMATED FOR TRIAL_____ ☐ HOURS/ ☐ DAYS

Item II. Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

| Applicable Reasons for Choosing Courthouse Location (see Column C below) |
|---|

1. Class Actions must be filed in the Stanley Mosk Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV.  Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 2. |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1., 2., 4. |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1., 2., 4. |
| | Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1., 2., 4. |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 2., 4. |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1., 2., 3. |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |

LACIV 109 (Rev. 01/11)
LASC Draft 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 1 of 4

| SHORT TITLE: | SPECIAL VALUE CONTINUATION PARTNERS, LP, E | CASE NUMBER |
|---|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☒ A6013  Fraud (no contract) | 1., 2.,③ |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2.,3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation    Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

| SHORT TITLE: SPECIAL VALUE CONTINUATION PARTNERS, LP, F | | CASE NUMBER |
| :-- | :-- | :-- |

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
| :-- | :-- | :-- | :-- |
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

SHORT TITLE:
SPECIAL VALUE CONTINUATION PARTNERS, LP.

CASE NUMBER

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C WHICH APPLIES IN THIS CASE | ADDRESS: |
|---|---|
| ☐1. ☐2. ☑3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | 355 South Grand Avenue |

| CITY: | STATE: | ZIP CODE: | |
|---|---|---|---|
| Los Angeles | CA | 90071 | |

Item IV. Declaration of Assignment: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the __Stanley Mosk__ courthouse in the __Central__ District of the Los Angeles Superior Court [Code Civ. Proc., § 392 et seq., and LASC Local Rule 2.0, subds. (b), (c) and (d)].

Dated: March 17, 2011

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1.  Original Complaint or Petition.

2.  If filing a Complaint, a completed Summons form for issuance by the Clerk.

3.  Civil Case Cover Sheet form CM-010.

4.  Complete Addendum to Civil Case Cover Sheet form LASC Approved CIV 109 (Rev. 01/07).

5.  Payment in full of the filing fee, unless fees have been waived.

6.  Signed order appointing the Guardian ad Litem, JC form FL-935, if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7.  Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev. 01/11)
LASC Draft 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 4 of 4

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE
Case Number _____

BC 457443

THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 7.3©).  There is additional information on the reverse side of this fo

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM | |
|---|---|---|---|---|---|---|
| Hon. Carolyn B. Kühl | 1 | 534 | Hon. Holly E. Kendig | 42 | 416 | |
| Hon. J. Stephen Czuleger | 3 | 224 | Hon. Mel Red Recana | 45 | 529 | |
| Hon. Luis A. Lavin | 13 | 630 | Hon. Debre Katz Weintraub | 47 | 507 | |
| Hon. Terry A. Green | 14 | 300 | Hon. Elizabeth Allen White | 48 | 506 | |
| Hon. Richard Fruin | 15 | 307 | Hon. Deirdre Hill | 49 | 509 | |
| Hon. Rita Miller | 16 | 306 | Hon. John Shepard Wiley Jr. | 50 | 508 | |
| Hon. Richard E. Rico | 17 | 309 | Hon. Abraham Khan | 51 | 511 | |
| Hon. Rex Heeseman | 19 | 311 | Hon. Susan Bryant-Deason | 52 | 510 | |
| Hon. Kevin C. Brazile | 20 | 310 | Hon. John P. Shook | 53 | 513 | |
| Hon. Zaven V. Sinanian | 23 | 315 | Hon. Ernest M. Hiroshige | 54 | 512 | |
| Hon. Robert L. Hess | 24 | 314 | Hon. Malcolm H. Mackey | 55 | 515 | |
| Hon. Mary Ann Murphy | 25 | 317 | Hon. Michael Johnson | 56 | 514 | |
| Hon. James R. Dunn | 26 | 316 | Hon. Ralph W. Dau | 57 | 517 | |
| Hon. Yvette M. Palazuelos | 28 | 318 | Hon. Rolf M. Treu | 58 | 516 | |
| Hon. John A. Kronstadt | 30 | 400 | Hon. David L. Minning | 61 | 632 | |
| Hon. Alan S. Rosenfield | 31 | 407 | Hon. Michael L. Stern | 62 | 600 | |
| Hon. Mary H. Strobel | 32 | 406 | Hon. Kenneth R. Freeman | 64 | 601 | |
| Hon. Charles F. Palmer | 33 | 409 | Hon. Mark Mooney | 68 | 617 | |
| Hon. Amy D. Hogue | 34 | 408 | Hon. Ramona See | 69 | 621 | |
| Hon. Daniel Buckley | 35 | 411 | Hon. Soussan G. Bruguera | 71 | 729 | |
| Hon. Gregory Alarcon | 36 | 410 | Hon. Ruth Ann Kwan | 72 | 731 | |
| Hon. Joanne O'Donnell | 37 | 413 | Hon. Teresa Sanchez-Gordon | 74 | 735 | |
| Hon. Maureen Duffy-Lewis | 38 | 412 | Hon. William F. Fahey | 78 | 730 | |
| Hon. Michael C. Solner | 39 | 415 | Hon. Emilie H. Elias* | 324 | CCW | |
| Hon. Michelle R. Rosenblatt | 40 | 414 | other | | | |
| Hon. Ronald M. Sohigian | 41 | 417 | | | | |

*Class Actions
All class actions are initially assigned to Judge Emilie H. Elias in Department 324 of the Central Civil West Courthouse (600 S.Commonwealth Ave., Los Angeles 900
This assignment is for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400. Depending on the
Outcome of that assessment, the class action case may be reassigned to one of the judges of the Complex Litigation Program or reassigned randomly to a court in the
Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____         JOHN A. CLARKE, Executive Officer/Clerk

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the Chapter Seven Rules, as applicable in the Central District, are summarized for your assistance.

### APPLICATION

The Chapter Seven Rules were effective January 1, 1994.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES

The Chapter Seven Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS

Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

**COMPLAINTS:** All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

**CROSS-COMPLAINTS:** Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE

The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts.  These matters may be heard and resolved at this conference.  At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

### SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Seven Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Seven Rules.  Such sanctions may be on a party or if appropriate on counsel for the party.

**This is not a complete delineation of the Chapter Seven Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is absolutely imperative.**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE
[CRC 3.221 Information about Alternative Dispute Resolution]
For additional ADR information and forms visit the Court ADR web application at www.lasuperiorcourt.org (click on ADR).

The plaintiff shall serve a copy of this Information Package on each defendant along with the complaint (Civil only).

**What is ADR:**
Alternative Dispute Resolution (ADR) is the term used to describe all the other options available for settling a dispute which once had to be settled in court. ADR processes, such as arbitration, mediation, neutral evaluation (NE), and settlement conferences, are less formal than a court process and provide opportunities for parties to reach an agreement using a problem-solving approach.

There are many different kinds of ADR. All of them utilize a "neutral", an impartial person, to decide the case or help the parties reach an agreement.

**Mediation:**
In mediation, a neutral person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

> **Cases for Which Mediation May Be Appropriate**
> Mediation may be particularly useful when parties have a dispute between or among family members, neighbors, or business partners. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

> **Cases for Which Mediation May Not Be Appropriate**
> Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Arbitration:**
In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

> **Cases for Which Arbitration May Be Appropriate**
> Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

> **Cases for Which Arbitration May Not Be Appropriate**
> If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Neutral Evaluation:**
In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

> **Cases for Which Neutral Evaluation May Be Appropriate**
> Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

> **Cases for Which Neutral Evaluation May Not Be Appropriate**
> Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences:**
Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

# LOS ANGELES SUPERIOR COURT ADR PROGRAMS

**CIVIL:**
- **Civil Action Mediation** (Governed by Code of Civil Procedure (CCP) sections 1775-1775.15, California Rules of Court, rules 3.850-3.868 and 3.870-3.878, Evidence Code sections 1115-1128, and Los Angeles Superior Court Rules, chapter 12.)
- **Retired Judge Settlement Conference**
- **Neutral Evaluation** (Governed by Los Angeles Superior Court Rules, chapter 12.)
- **Judicial Arbitration** (Governed by Code of Civil Procedure sections 1141.10-1141.31, California Rules of Court, rules 3.810-3.830, and Los Angeles Superior Court Rules, chapter 12.)
- **Eminent Domain Mediation** (Governed by Code of Civil Procedure section 1250.420.)
- **Civil Harassment Mediation**
- **Small Claims Mediation**

**FAMILY LAW (non-custody):**
- **Mediation**
- **Forensic Certified Public Accountant (CPA) Settlement Conference**
- **Settlement Conference**
- **Nonbinding Arbitration** (Governed by Family Code section 2554.)

**PROBATE:**
- **Mediation**
- **Settlement Conference**

## NEUTRAL SELECTION

Parties may select a mediator, neutral evaluator, or arbitrator from the Court Party Select Panel or may hire someone privately, at their discretion. If the parties utilize the Random Select Mediation or Arbitration Panel, the parties will be assigned on a random basis the name of one neutral who meets the case criteria entered on the court's website.

## COURT ADR PANELS

| | |
|---|---|
| **Party Select Panel** | The Party Select Panel consists of mediators, neutral evaluators, and arbitrators who have achieved a specified level of experience in court-connected cases. The parties (collectively) may be charged $150.00 per hour for the first three hours of hearing time. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing. |
| **Random Select Panel** | The Random Select Panel consists of trained mediators, neutral evaluators, and arbitrators who have not yet gained the experience to qualify for the Party Select Panel, as well as experienced neutrals who make themselves available pro bono as a way of supporting the judicial system. It is the policy of the Court that all Random Select Panel volunteer mediators, neutral evaluators, and arbitrators provide three hours hearing time per case. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing. |
| **Private Neutral** | The market rate for private neutrals can range from $300-$1,000 per hour. |

## ADR ASSISTANCE

For assistance regarding ADR, please contact the ADR clerk at the courthouse in which your case was filed.

| COURTHOUSE | ADDRESS | ROOM | CITY | TELEPHONE | FAX |
|---|---|---|---|---|---|
| Antonovich | 42011 4th St. West | None | Lancaster, CA 93534 | (661)974-7275 | (661)974-7050 |
| Chatsworth | 9425 Penfield Ave. | 1200 | Chatsworth, CA 91311 | (818)576-8565 | (818)576-8687 |
| Compton | 200 W. Compton Blvd. | 1002 | Compton, CA 90220 | (818)603-3072 | (310)223-0337 |
| Glendale | 600 E. Broadway | 273 | Glendale, CA 91206 | (818)500-3160 | (818)548-5470 |
| Long Beach | 415 W. Ocean Blvd. | 316 | Long Beach, CA 90802 | (562)491-6272 | (562)437-3802 |
| Norwalk | 12720 Norwalk Blvd. | 308 | Norwalk, CA 90650 | (562)807-7243 | (562)462-9019 |
| Pasadena | 300 E. Walnut St. | 109 | Pasadena, CA 91101 | (626)356-5685 | (626)666-1774 |
| Pomona | 400 Civic Center Plaza | 106 | Pomona, CA 91766 | (909)620-3183 | (909)629-6283 |
| San Pedro | 505 S. Centre | 209 | San Pedro, CA 90731 | (310)519-6151 | (310)514-0314 |
| Santa Monica | 1725 Main St. | 203 | Santa Monica, CA 90401 | (310)260-1829 | (310)319-6130 |
| Stanley Mosk | 111 N. Hill St. | 113 | Los Angeles, CA 90012 | (213)974-5425 | (213)633-5115 |
| Torrance | 825 Maple Ave. | 100 | Torrance, CA 90503 | (310)222-1701 | (310)782-7326 |
| Van Nuys | 6230 Sylmar Ave. | 418 | Van Nuys, CA 91401 | (818)374-2337 | (818)902-2440 |

**Partially Funded by the Los Angeles County Dispute Resolution Program**
A complete list of the County Dispute Resolution Programs is available online and upon request in the Clerk's Office

Page 2 of 2

LAADR 005 (Rev. 05/09)
LASC Approved 10-03

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Dolly Gee and the assigned discovery Magistrate Judge is Ralph Zarefsky.

The case number on all documents filed with the Court should read as follows:

## CV11- 3290 DMG (RZx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

========================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X]  Western Division** | **[ ]  Southern Division** | **[ ]  Eastern Division** |
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

COPY

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself □) | DEFENDANTS |
|---|---|
| Special Value Continuation Partners, L.P., a Delaware limited partnership; Tennenbaum DIP Opportunity Fund, LLC, a Delaware limited liability company ; and Tennenbaum Opportunities Partners V, LP, a Delaware limited | Richard Bachmann, Kenneth Burke, Edward C. Hutcheson, Myles Scoggins, Per Staehr, Geoff A. Jones, D. Michael Wallace, Brent Cenkus, Stephen Morrell, Rishi Varma, Mads Bardsen, Bjorn Inge Staalesen, Gerald Gray, as individuals |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Peter W. Devereaux, Esq., Bar No. 119666, Robert A. Klyman, Esq. Bar No. 142723; Latham & Watkins LLP, 355 South Grand Ave., Los Angeles CA 90071; Tel: 213-485-1234 | David T. Biderman, Bar No. 101577, Steven G.F. Polard, Bar No. 90319 PERKINS COIE LLP, 1888 Century Park E., Ste. 1700, LA, CA 90067-1721, Tel: 310-788-9900; Oleg Elkhunovich, Bar No. 269238, SUSMAN GODFREY LLP, 1901 Ave. of the Stars, Ste. 950, LA, CA 90067-6029, Tel: 310-789-3193 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

□ 1 U.S. Government Plaintiff   □ 3 Federal Question (U.S. Government Not a Party)

□ 2 U.S. Government Defendant   ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | □ 1 | □ 1 | Incorporated or Principal Place of Business in this State | ☒ 4 | □ 4 |
| Citizen of Another State | □ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | □ 5 | □ 5 |
| Citizen or Subject of a Foreign Country | □ 3 | □ 3 | Foreign Nation | □ 6 | □ 6 |

**IV. ORIGIN** (Place an X in one box only.)

□ 1 Original Proceeding   ☒ 2 Removed from State Court   □ 3 Remanded from Appellate Court   □ 4 Reinstated or Reopened   □ 5 Transferred from another district (specify):   □ 6 Multi-District Litigation   □ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes □ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** □ Yes ☒ No   □ MONEY DEMANDED IN COMPLAINT: $ _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. § 1452, 28 U.S.C. §§ 1332, 1334, 1441 and 1452, and Federal Rule of Bankruptcy Procedure 9027

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL INJURY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| □ 400 State Reapportionment | □ 110 Insurance | □ 310 Airplane | □ 370 Other Fraud | □ 510 Motions to Vacate Sentence Habeas Corpus | □ 710 Fair Labor Standards Act |
| □ 410 Antitrust | □ 120 Marine | □ 315 Airplane Product Liability | □ 371 Truth in Lending | | □ 720 Labor/Mgmt. Relations |
| □ 430 Banks and Banking | □ 130 Miller Act | □ 320 Assault, Libel & Slander | □ 380 Other Personal Property Damage | □ 530 General | □ 730 Labor/Mgmt. Reporting & Disclosure Act |
| □ 450 Commerce/ICC Rates/etc. | □ 140 Negotiable Instrument | □ 330 Fed. Employers' Liability | □ 385 Property Damage Product Liability | □ 535 Death Penalty | |
| □ 460 Deportation | □ 150 Recovery of Overpayment & Enforcement of Judgment | □ 340 Marine | BANKRUPTCY | □ 540 Mandamus/ Other | □ 740 Railway Labor Act |
| □ 470 Racketeer Influenced and Corrupt Organizations | | □ 345 Marine Product Liability | □ 422 Appeal 28 USC 158 | □ 550 Civil Rights | □ 790 Other Labor Litigation |
| □ 480 Consumer Credit | □ 151 Medicare Act | □ 350 Motor Vehicle | □ 423 Withdrawal 28 USC 157 | □ 555 Prison Condition | □ 791 Empl. Ret. Inc. Security Act |
| □ 490 Cable/Sat TV | □ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | □ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| □ 810 Selective Service | | □ 360 Other Personal Injury | □ 441 Voting | □ 610 Agriculture | □ 820 Copyrights |
| □ 850 Securities/Commodities/ Exchange | □ 153 Recovery of Overpayment of Veteran's Benefits | □ 362 Personal Injury- Med Malpractice | □ 442 Employment | □ 620 Other Food & Drug | □ 830 Patent |
| □ 875 Customer Challenge 12 USC 3410 | □ 160 Stockholders' Suits | □ 365 Personal Injury- Product Liability | □ 443 Housing/Acco- mmodations | □ 625 Drug Related Seizure of Property 21 USC 881 | □ 840 Trademark |
| ☒ 890 Other Statutory Actions | □ 190 Other Contract | □ 368 Asbestos Personal Injury Product Liability | □ 444 Welfare | | SOCIAL SECURITY |
| □ 891 Agricultural Act | □ 195 Contract Product Liability | IMMIGRATION | □ 445 American with Disabilities - Employment | □ 630 Liquor Laws | □ 861 HIA (1395ff) |
| □ 892 Economic Stabilization Act | □ 196 Franchise | □ 462 Naturalization Application | | □ 640 R.R. & Truck | □ 862 Black Lung (923) |
| □ 893 Environmental Matters | REAL PROPERTY | □ 463 Habeas Corpus- Alien Detainee | □ 446 American with Disabilities - Other | □ 650 Airline Regs | □ 863 DIWC/DIWW (405(g)) |
| □ 894 Energy Allocation Act | □ 210 Land Condemnation | □ 465 Other Immigration Actions | □ 440 Other Civil Rights | □ 660 Occupational Safety /Health | □ 864 SSID Title XVI |
| □ 895 Freedom of Info. Act | □ 220 Foreclosure | | | □ 690 Other | □ 865 RSI (405(g)) |
| □ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | □ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| □ 950 Constitutionality of State Statutes | □ 240 Torts to Land | | | | □ 870 Taxes (U.S. Plaintiff or Defendant) |
| | □ 245 Tort Product Liability | | | | □ 871 IRS-Third Party 26 USC 7609 |
| | □ 290 All Other Real Property | | | | |

**CV11    03290**

FOR OFFICE USE ONLY:   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                    CIVIL COVER SHEET                    Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☑No  ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| California | Delaware |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Texas, Colorado, Norway, United Kingdom |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Texas |

* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER):  _____   Date April 18, 2011

**Notice to Counsel/Parties:**   The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |